# SUPREME COURT.

## Seth Pope agt. Henry Hart.

In an *affidavit* for a *warrant* by a justice of the peace, it is sufficient for the plaintiff in stating his cause of action for a tort, to allege that he *believes* he has a cause of action against the defendant, and then set out when and how he claims it arose. It is not necessary to swear *positively* as to the cause of action.

In a suit commenced by a warrant before a justice of the peace, the plaintiff, although he be a resident of the county, may have an *adjournment* on his own application; the defendant, however, is thereby *discharged from custody*; but the suit is not *discontinued* by such adjournment or discharge.

Under the decision of *Seymour* agt. *Wilson*, (4 *Kern.*, 567; *which overrules Sizer* agt. *Miller*, 1 *Hill*, 227; *and Hanford* agt. *Archer*, 1 *Hill*, 347,) this court is bound to hold that a party when charged with an intent to deceive, or cheat or defraud, or with fraud and deceit, must be allowed to testify as a witness in his own behalf, that he did not *intend* to cheat, deceive or defraud, or to practice any fraud or deceit in the transaction, however inconclusive, inconsistent or unsatisfactory his testimony may be.

*Broome General Term, January*, 1862.

*Present,* Balcom, Campbell and Parker, *Justices.*

This action was brought before a justice of the peace of Cortland county, and was commenced by warrant. The affidavit on which the warrant issued was in the words and figures following, to wit:

"State of New York, Cortland county, ss.—Seth Pope, of Cortland, in said county, being duly sworn, says that he has, as he believes, a good cause of action against Henry Hart, of Summer Hill, in the county of Cayuga, for fraud and deceit in the sale by him of a certain pair of horses to this deponent, in the year 1857.

This deponent makes application for a warrant therefor against the said Hart; and further says, that the said Hart is a non-resident of the said county of Cortland, and resides at Summer Hill in the county of Cayuga.

"(Signed.) Seth Pope.

"Sworn before me, this 24th day of January, 1861.

"P. B. Davis. Justice of the Peace."

The defendant was arrested and taken before the justice at Cortlandville, by virtue of the warrant, on the 24th day of January, 1861, when the plaintiff complained of him for fraud and deceit in the sale of a span of horses by defendant to plaintiff in March, 1857. The plaintiff alleged that the horses were balky, kicking, untrue and vicious, and that one of them was an original (meaning, as is supposed, a ridgling.) He claimed that the defendant knew the horses were thus vicious, and that one was an original or ridgling, and that he made such fraudulent statements and representations to the plaintiff concerning them, as induced him to believe they were kind, true and gentle; and fraudulently concealed the fact from plaintiff's knowledge that one of them was only half gelt.

Before the defendant answered the complaint he objected to the affidavit on which the warrant was issued " as insufficient." The justice overruled the objection, and the defendant excepted. The defendant then answered the complaint, and denied each and every allegation in it.

The plaintiff then asked the justice to adjourn the cause, to which the defendant objected; but the justice adjourned it until the 30th day of January, 1861. The defendant excepted to the decision of the justice adjourning the cause on plaintiff's motion. When the cause was tried the plaintiff gave evidence that tended to establish his alleged cause of action. The defendant's evidence tended to show that he was not guilty of any fraud or deceit in the sale of the horses to the plaintiff.

The defendant was sworn as a witness in his own behalf, and after testifying to what he claimed was said between him and the plaintiff, his counsel asked him the following question: " Did you intend on that sale to cheat, defraud or deceive the plaintiff in any manner?" To which the plaintiff objected on the ground that the same was inadmissible, and that the jury were to judge from what was said

and done. The justice sustained the objection, and the defendant excepted.

The jury found a verdict in favor of the plaintiff for fifty dollars damages; on which the justice rendered a judgment in his favor, with costs.

The Cortland county court affirmed the judgment, and the defendant appealed to this court.

No other facts need be stated, as the foregoing and others that are contained in the following opinion, are sufficient for a correct understanding of all the questions in the case that this court deemed worthy of notice.

DUELL & FOSTER, *for plaintiff.*
A. P. SMITH, *for defendant.*

By the court, BALCOM, P. Justice. A warrant is the only process by which a person can commence an action for a tort or wrong before a justice of the peace in the county in which he resides, against a non-resident of such county. (1 *R. S.*, 5*th ed.*, 429, § 15; *id.*, 462, § 213; *Benedict's Treatise*, 3*d ed.*, 68 *and* 69; 1 *Cow. Tr.*, 2*d ed.*, 461 *and* 462.) And it is provided by statute that " in all cases on application for a warrant, except when the suit shall have been commenced by summons, the person applying shall by affidavit state the facts and circumstances within his knowledge, showing the grounds of his application, whereby the justice may the better judge of the necessity and propriety of issuing such warrant." (3 *R. S.*, 5*th ed.*, 429, § 17; 1 *Cow. Tr.*, 2*d ed.*, 463.) The defendant's counsel insists that the plaintiff did not state sufficient facts and circumstances in his affidavit in this case, to entitle him to a warrant. But I am of the opinion he did. He stated positively that he was a resident of the county in which the action was brought, and that the defendant was a resident of Cayuga county. The affidavit was certainly sufficient in respect to the residence of the parties. (*See Benedict's Tr.*, 3*d ed.*, 69

*and* 70 ; 1 *Cow. Tr.*, 2d *ed.*, 463 ; *Hunter* agt. *Burtis*, 10 *Wend.*, 360 ; *Loder* agt. *Phelps*, 13 *id.*, 46 ; *Smith* agt. *Luce*, 14 *id.*, 237, 20 *id.*, 77 ; *Whitney* agt. *Shufelt*, 1 *Denio*, 529.) He also stated he had, *as he verily believed*, a good cause of action against the defendant, for fraud and deceit in the sale by him of a certain pair of horses to the plaintiff in the year 1857. This clearly showed, if he had a cause of action against the defendant, that it was not upon contract, but was *ex delicto*—in other words, for a tort or wrong.

The contract of sale was stated and proved by way of inducement ; but the fraud and deceit constituted the gist of his claim. The defendant's counsel seems to think the plaintiff should have sworn positively that he had a cause of action against the defendant for the alleged fraud and deceit, or that he should have stated more facts and circumstances from which it might be inferred he had such a cause of action.

It will be observed that the statute only requires a person applying for a warrant, to state the facts and circumstances " within his knowledge" showing the grounds of his application. Neither of the authorities above cited, nor any other that I am aware of, holds that the person or party who applies for a warrant in an action *ex delicto* must swear positively that the plaintiff has a cause of action against the defendant, or to sufficient facts and circumstances clearly to show the existence of the alleged cause of action. Such affidavit could not be truthfully made by one plaintiff in twenty.

In this case, if the alleged fraud and deceit were proved on the trial, the same were established by isolated facts and circumstances that were stated by different witnesses, and as to which the plaintiff had no personal knowledge. I think all a person need state in his affidavit for a warrant, as to having a cause of action for a tort or wrong, is, that he believes he has a cause of action against the defendant, and then set out when and how he claims it arose, so

that it may be seen to be *ex delicto.* If these views are correct, the affidavit authorized the justice to issue the warrant in this case.

The defendant's counsel contends that the justice erred in adjourning the cause on the application of the plaintiff, from the 24th to the 30th day of January. The defendant was entitled to be discharged from the custody of the constable at the expiration of twelve hours from the time he was taken before the justice upon the warrant, because the trial of the cause was not commenced within that period. (2 *R. S.*, 229, § 25; *Arnold* agt. *Stevens,* 10 *Wend.*, 515; *Benedict's Tr.*, 3d ed., 72; 1 *Cow. Tr.*, 2d ed., 507; *id.*, 532 *and* 533.) And as the return of the justice shows nothing to the contrary, it will be presumed he was discharged within that period. But the plaintiff, notwithstanding that, was entitled to have the cause adjourned upon showing good reasons therefor. It is stated in Cowen's Treatise that it is also inferable from the language of the 72d section, (3 *R. S.*, 437, § 62, *5th* ed.,) that the plaintiff, in a suit commenced by warrant, although he be a resident, may have an adjournment on his own application; but in such case the defendant is to be discharged from custody. (2 *Cow. Tr.*, 2d ed., 840 *and* 841.) The cause was not discontinued by the adjournment or discharge of the defendant from the custody of the constable. (2 *R. S.*, 239, §§ 72, 73.)

The only other question in the case worthy of notice, arises out of the refusal of the justice to allow the defendant to answer the following question, as a witness, that was put to him by his counsel, viz : " Did you intend, on that sale, to cheat, defraud or deceive the plaintiff in any manner ?" The sale here referred to was that of the horses by the defendant to the plaintiff, in which the latter claimed he was deceived and defrauded. The plaintiff objected to the question on the ground that it was inadmissible, and that the jury were to judge from what was said and done.

His counsel now contends it was immaterial, for the reason that the defendant had stated all that was said and done between the parties on the sale. This position is untenable, if the intent of the defendant in what he said and did in selling the horses to the plaintiff was material. In *Sizer* agt. *Miller and others*, (1 *Hill*, 227,) the plaintiff sought to recover upon a promissory note, to which the defence of usury was interposed ; and Clary, one of the payees named in the note, was called as a witness for the defendant, and on his cross-examination was asked by plaintiff's counsel, " if there was any intention, shift or device on his part, in the transaction, to get or realize more than seven per cent. from Miller" the borrower. The question was excluded, and the plaintiff's counsel excepted. The plaintiff was beaten, but a new trial was granted by a majority of the court, without passing upon the question raised by the above exception. Justice COWEN dissented, and in his dissenting opinion said Clary was asked whether there was any intention, shift or device on his part to get more than seven per cent. The question would have been very exceptionable as a leading one, had it not been put to the witness on cross-examination ; *but it was exceptionable, also, as calling on him to pronounce broadly upon the point in issue.*

*Hanford* agt. *Archer*, (1 *Hill*, 347,) was replevin. The plaintiff's title to the goods in question was by a sale to him from the assignees of one Norton. One of the assignees was called as a witness for the plaintiff, who put him the following question : " So far as you are concerned, was there any actual fraud in the whole transaction ?" And it was held irrelevant, as being an inquiry after the secret operations of the witness' mind, which could not affect the case one way or the other. The reversal of that case by the court of dernier resort, (4 *Hill*, 271,) was not for the reason that the question I have mentioned was proper, but it was placed upon the ground, and it was held by senator HOPKINS and chancellor WALWORTH, the only members of

that court who alluded to the question, that for the purpose of rebutting the presumption of fraud, which the statute raises from the want of a change of possession of the goods sold, mortgaged or assigned, it is not proper to ask the vendor in general terms whether, so far as he is concerned, there was any actual fraud in the whole transaction. Those decisions were the only evidence of what the law is on the question under consideration, that I recollect, until the court of appeals decided in *Seymour* agt. *Wilson*, (4 *Kern.*, 567,) that on an issue of fact, as to whether an assignment or transfer of property was made to hinder, delay or defraud creditors, it is competent, where the assignor is a witness, to inquire of him whether, in making the assignment or transfer, he intended to delay or defraud his creditors. That decision remains unshaken by any subsequent adjudication; and I think, notwithstanding the report of it does not show the cases in Hill's reports, which I have mentioned, nor cited by counsel or alluded to by the court, that it must be regarded as overruling those cases. I am therefore of the opinion that this court is now bound to hold that a party, when charged with an intent to deceive or cheat or defraud, or with fraud and deceit, must be allowed to testify as a witness in his own behalf, that he did not intend to cheat, deceive or defraud, or to practice any fraud or deceit in the transaction wherein he is charged with having had such motive, however inconclusive, unsatisfactory or inconsistent his evidence may be. (*See* 22 *N. Y. R.*, 549 *and* 550.)

The return of the justice in this case shows that the plaintiff asked the defendant if he would warrant the horses, and that he expressly refused so to do. There are two claims in the complaint; the first is for false, deceitful and fraudulent representations, and the second is for a fraudulent and wilful concealment. In such case, "the complaint to be good, must aver a knowledge of the fraud on the part of the defendant, because to support the action

such knowledge must be made to appear by proof on the trial." (1 *Van Santvoord's Pl.*, 2d ed., 286 ; *see* 1 *Cow. Tr.*, 2d ed., 328 ; 2 *id.*, 644, '5, '6 ; 2 *Johns.*, 550 ; 6 *id.*, 138 ; *Collins* agt. *Denison*, 12 *Metcalf*, 549.) If the defendant fraudulently represented to the plaintiff that the horses were materially different from what he knew they were, or fraudulently concealed a material fact concerning them, from his knowledge, he intended to deceive, cheat and defraud him. Hence the defendant had the right to testify that he did not, on the sale of them to the plaintiff, intend to cheat, defraud or deceive him in any manner.

The weight due to the evidence, if it had been admitted, would have been for the jury to determine, (*see* 4 *Kern.*, 567 ; 22 *N. Y. R.*, 549 *and* 550.) Such evidence, in some cases, can have but little influence ; but we cannot say, as was held in *Seymour* agt. *Wilson*, (19 *N. Y. R.*, 417,) that it could not have had any in this case, and therefore hold that the error of the justice in rejecting it did not affect the merits. The case is not like that of *Bennett* agt. *Judson*, (21 *N. Y. R.*, 238.)

My opinion is, that for the error of the justice in refusing to allow the defendant to testify that he did not intend, on the sale of the horses, to cheat, defraud or deceive the plaintiff in any manner, the judgment of the Cortland county court, and that of the justice, should be reversed, with costs.

Decision accordingly.