SAMUEL S. THORN, Respondent, *v.* JACOB H. HELMER, Appellant.

Upon complaint for fraudulent misrepresentations whereby the plaintiff was induced to abandon his professional practice in one place and remove to another and remote place, and enter into partnership with the detendant, it was competent for the plaintiff to give testimony concerning the value and growing character of the practice which he had abandoned, not as affecting the question of damages but as tending to establish the fact that he relied upon the defendant's representations concerning the value of the business in which he was induced to engage as partner.

His belief in such representations is one of the facts to be proved, and the plaintiff's own testimony directly upon the point may be received, and the weight to be attached to it is a question for the jury.

In such case it is also competent to show the amount of business done by the parties during the year after the partnership was formed, as affording a presumption of what the business of the preceding year was and thus helping to confirm or to refute the charge of false representations concerning the business of that year.

Where, as a part of the contract of partnership in such case, the plaintiff purchased the house and office of the defendant for a price alleged to be above its real value, evidence to establish the real value of such premises is competent as further tending to show that the plaintiff believed the representations of the defendant concerning the value of his business.

It is also admissible as affecting the question of damages.

Where a part of the representations alleged to be fraudulent were that the defendant had had as many as eight cases of fracture at one time, it is competent to introduce the testimony of a physician practicing in the village concerning his knowledge of the number of cases of fracture existing at one time in such village.

The right of the plaintiff to his action for damages sustained in consequence of such fraudulent representations was not compromised by his entering into an agreement with the defendant at the end of the first year of the partnership, to dissolve the partnership and allow the defendant to continue in the practice of his profession in the village; and a motion by the defendant for nonsuit on that ground was properly overruled.

*Lyman Tremain*, for the plaintiff.

*S. E. Church*, for the defendant.

WRIGHT, J. This case is of a novel character. The parties were physicians and surgeons, the plaintiff claiming to have been injured by a fraud practiced upon him in the

making of a contract. In September, 1857, the plaintiff was, and had been for three years previously, practicing medicine and surgery in Milwaukee, in the State of Wisconsin. For reasons of a family nature, he desired to remove to Lockport, in this State, provided his business relations would warrant it. The defendant was a practicing physician and surgeon at Lockport, and knew of this desire of the plaintiff to change his location. About the time last mentioned, the plaintiff entered into a contract, in writing, with the defendant, whereby he agreed to purchase the defendant's house, where he resided and had his office, for the sum of $7,000 (alleged to be some $1,500 above its actual value), and to enter into partnership with him for the term of two years; the defendant to be at liberty to withdraw from the firm at the end of one year, provided he withdrew from the practice at that place. The complaint alleged that, prior to the making of the contract, for the purpose of inducing the plaintiff to purchase the house and lot of the defendant for $7,000, and to enter into partnership with him on the terms set forth in the contract, and to execute said contract, the defendant represented that his professional business then was, and had been, worth the sum of $5,000 per year, and could be easily increased so as to be worth the sum of $7,000 per year; that his cases of surgery alone were sufficient to support his family; that for a long time he had on hand, on an average, eight cases of fracture; that his professional business had been and was so large that he was obliged to keep four horses in order to do it, and to employ Doctor Hill, his former partner, to practice for him at an annual salary. These representations the evidence showed, and the jury found, were false in substance and in fact, and the defendant knew them to be false when he made them. But they had their intended effect. The plaintiff, believing the representations as to the extent and value of the defendant's practice, was induced thereby to remove from Milwaukee to Lockport, to purchase the house and lot at the price agreed upon, and to enter into partnership with him. The result was, that, for the year the parties were together, their charges for profes-

sional services were about $2,250, worth from $1,000 to $1,200, and their surgical business only worth about $250.

Upon, substantially, this state of facts and under a charge of the court to which no exception was taken, the jury found that the plaintiff had sustained damages in the sum of one thousand dollars.

Any questions open for review in this court arise upon exceptions to the admission of evidence, and to the refusal of a motion for a nonsuit. These will be noticed in the order in which they arose on the trial.

1. The plaintiff himself, as a witness, was inquired of and allowed to testify as to the value of his professional business at Milwaukee, at the time of his entering into copartnership with the defendant and as to its being a growing business. I do not regard this as error. It may be conceded that the evidence was inadmissible on the question of damages; and so the judge, unsolicited, instructed the jury. But, I think, it was competent in another point of view. To make out the plaintiff's case, it was necessary to prove that he relied upon the defendant's representations; and this could be done by direct evidence or by circumstances tending to show such reliance. In this latter class the proof falls. The defendant made certain representations as to the amount and value of his practice at Lockport. The plaintiff was engaged in a practice at Milwaukee profitable and increasing. Would not such a fact have a direct and strong tendency to induce the belief that such practice and future prospects would not be given up without the plaintiff was convinced that his prospects at Lockport were very advantageous? Would he be likely to abandon his practice at Milwaukee, if it were a valuable and increasing one, for the purpose of going to Lockport, unless he believed in the representations made by the defendant, and that his position at Lockport, assuming the representations to be true, would be beneficial to him? It was proof tending to make out that a strong motive must have been present to induce such removal. A reliance on the defendant's representations would furnish such a motive. Any evidence, therefore, tending to show that a

strong motive must naturally have existed to induce this removal, was proper.

2. The plaintiff, as a witness, after giving evidence showing that the defendant prior to the execution of the contract made to him the representations set forth in the complaint, was asked the question: "Did you believe the representations so made to you by the defendant?" The witness answered, under objection, that he did believe them. The ruling here was not erroneous. The case of *Seymour* v. *Wilson* (14 N. Y., 567) is decisive upon the point. There it was held that it was competent to inquire of an assignor, whether, in making the assignment, he intended to delay or defraud his creditors. But I quite concur with the Supreme Court that, on principle, the testimony was admissible. The plaintiff was a competent witness to testify to any relevant fact in the case within his knowledge. The question whether he believed the representations of the defendant was one of fact, and his answer as to the fact, directly, was no more objectionable, than proof by him of circumstances tending to show it. The impracticability of contradicting a witness, when he is allowed to testify to the operation of his own mind, forms no objection to the admissibility of such testimony. It is to be received, and the weight to be given to it is a question for the jury.

3. Evidence was admitted as to the amount of professional business done by the plaintiff and defendant pursuant to the contract, during the year they were together, and also as to the number of horses required to be kept by them for the transaction of such business. It was offered and admitted as having a tendency to show the amount of business done by the defendant the year immediately preceding, and at the time of making the contract. The defendant represented that his business was worth $5,000 per year, that it then was and had been worth that sum, and that he was obliged to keep four horses to do it. If that were true, the presumption naturally would be that it would continue, at least, about that sum in the succeeding year. There was no such change of circumstances shown as to render it probable that

a great diminution of business would ensue. I think the evidence was competent and proper for the purpose for which it was offered and received. It showed the existence of a circumstance from which it might naturally and justly be inferred that the practice of the defendant the year preceding had not been as great as represented by him, nor any thing like it.

4. A witness on behalf of the plaintiff was asked this question: "What, in your opinion, were those premises (the house and office sold to plaintiff by defendant) worth on the 8th of September, 1857?" This was objected to, on the ground of the immateriality of the evidence called for by the question; but the objection was overruled, and evidence given of the actual value of the premises, at the time of entering into the contract. This was not error. The complaint averred, that, at the time of entering into the contract, the house was not worth more than $5,500; that for the purpose of inducing the plaintiff to purchase the house and office at a large price, and more than their value, and to enter into partnership with the defendant, the latter made the representations as to the extent and value of his practice, and that the plaintiff, trusting in the representations, and being deceived thereby, "did enter into an agreement with said Helmer in writing, wherein plaintiff agreed to purchase said house and lot of said Helmer for $7,000," and to enter into partnership with him. It was competent for the purpose of sustaining these allegations to show exactly what the house was worth, and that the plaintiff was induced to buy it at a much larger sum, by the representations of the defendant as to the amount of his practice; for the purchase of the house and the entry into partnership were to be concurrent acts—substantially one transaction. They were, in fact, the subject of a single contract. In the court below, the competency of the evidence was placed upon grounds similar to those justifying the admission of proof of the plaintiff's business and prospects at Milwaukee, viz.: its tendency to show that the plaintiff believed in the representations of the defendant as to the extent and value of his professional business. It may stand

on that ground, for it may be pertinently asked, would the plaintiff have given the enhanced price, unless he had believed the representations? The giving of such price manifestly tends to show that he did believe them. But we are of the opinion that the evidence was competent and proper on the question of damages. The plaintiff was induced by the fraudulent representations of the defendant as to the extent and value of his professional business, to purchase his house and office for confessedly more than their value, and form a business connection with him, to continue at the farthest but two years, and at the option of defendant might terminate in one year. The two things formed the subject of one contract, and the plaintiff was induced to enter into it by the fraud of the defendant. It was parcel of the contract that he was to pay a sum for the defendant's premises and place of business much greater than their real value, not, as was said by the court below, as a part of the price paid for the business connection, for there would have been no such connection had it not been for the fraud practiced by the defendant; but, as will be appreciated by every medical practitioner, for the benefit and advantage expected to result from occupying the office and place of business of his predecessor in the profession. And this disposition of his place of business for a sum over its real value was the precise advantage sought and gained by the defendant by his fraudulent representations as to the amount of business he was and had been doing. We are therefore of the opinion that, on the question of damages, it was competent for the jury to consider the price paid for the defendant's premises over their real value. The rule is, that the party injured by fraud in the making of a contract is entitled, by a recovery, to be placed in a situation equally beneficial, as to the subject of the contract, as he was induced by the fraud of the defendant to believe he would be, and in reference to which he entered into the contract.

5. Doctor McCullum, who had been a practicing physician and surgeon in the village of Lockport for fourteen years, after testifying that he was acquainted with the defendant

and his "ride" about as much as one physician generally is with that of another in the same village, that the population of Lockport was between 8,000 and 9,000, and that there were twelve or fourteen physicians in the village and its vicinity, was asked the question: "How many cases of fracture have you known to exist in the village of Lockport and its vicinity at any one time?" The defendant's ground of objection to the question, and the evidence called for thereby, was its irrelevancy and immateriality; which objection was overruled, and the witness answered that the greatest number of fractures he had known to exist at any one time in Lockport was three or four. I do not think this error. The defendant had represented that he had had on hand, on an average, eight cases of fracture for a long time. The truth of this representation might be disproved by circumstantial as well as by direct evidence. Proof that the whole number of cases of fracture existing in Lockport and its vicinity at any one time was not eight, would show the falsity of the representation. I think it was competent to inquire of Doctor McCullum, who had practiced medicine and surgery at Lockport for fourteen years, how many such cases altogether he had known to exist at one time. He possessed a general knowledge of the subject, and the testimony was competent, as far as it went, as tending to show the number of fractures there were altogether. It was no objection to its competency that the other physicians of the village were not offered to be called to the same fact. By showing that all the cases of fracture did not amount to eight, the representations of the defendant would seem to be false.

6. The motion for a nonsuit was properly overruled. All that was required of the plaintiff to entitle him to recover was to show the fraud of the defendant, that he was deceived and imposed upon by such fraud, and that he had sustained damage thereby. These were questions for the jury. It is not claimed, however, that upon the merits the case should have been withheld from the jury. The ground taken on the trial, and now, is, that the plaintiff, after a knowledge of all the facts respecting the defendant's professional business,

ratified the contract between them, and waived any pretended fraud which induced him to enter into it. It appeared that the parties were one year in business together, at the end of which time the connection was dissolved, and an agreement, in writing, attached to the original contract, allowing the defendant to practice his profession in Lockport, if he chose. The operation of this voluntary modification of the contract of 8th September, 1857, was not to preclude the plaintiff from suing for the fraud practiced upon him, by which he was induced to enter into such contract. The original agreement was that the partnership was to continue two years, with liberty to the defendant to withdraw at the end of one year, provided he withdrew entirely from practice at Lockport, and the subsequent agreement merely took off the restriction from the defendant as to his practicing at Lockport. This the plaintiff had a right to do without in any manner compromising his right of action for the fraud. This second agreement in no way released the defendant from any liability that he was under in regard to his false representations. The fact that when the partnership was dissolved, the plaintiff made no claim to have been defrauded in the contract of September, 1857, but went on in its fulfillment on his part, has no significance. It was not shown that he had then discovered the fraud; but if it had been, and he was silent on the subject, it could not have altered his legal rights. A party who has been drawn into executing a contract by fraudulent representations, may affirm the contract after the discovery of the fraud, and, notwithstanding such affirmance, sue for the fraud. The plaintiff had the right to go on, fulfill his contract, and recover damages for the fraud practiced upon him. By doing so, he waived no legal right.

Upon the whole, I am of the opinion that none of the exceptions are well taken, and that the judgment should be affirmed.

All concur except Brown and Davies, JJ.

Judgment affirmed.