WALTER S. HUBBELL, Respondent, v. STEPHEN H. ALDEN, CHARLES A. MEIGS and AUGUSTUS W. GREENLEAF, Appellants.

(GENERAL TERM, SECOND DEPARTMENT, SEPTEMBER, 1870.)

Where the plaintiff brought his action against two defendants, asking judgment for the recovery of moneys paid on a sale of worthless stock, and alleging fraudulent representations and collusion, by which he had been induced to make the purchase, and a tender of the stock to one of the defendants, and a referee having, upon insufficient evidence of collusion

Hubbell *v.* Alden.

between them and of joint interest, directed judgment against the defendants jointly, it seems that the court, on appeal, would refuse to sever the judgment, affirm it as to the only defendant shown to be liable, and set it aside as to the other, or in case each were shown to be equally liable, to affirm the judgment against such defendant as the plaintiff might elect, inasmuch as the action by reason of the need of necessary averments in the complaint was not maintainable for damages on account of fraud, and was not maintainable against one of the defendants for the purchase-money, on the ground of failure of consideration or rescission of contract, because the stock had not been tendered back to him.

Upon a question whether representations as to the value of stock were fraudulently made with the design to, and did, induce a purchase of some of it, statements concerning the value of the stock and solicitations to purchase, made by the alleged fraudulent vendor to third parties, not in presence of the vendee, at different times and at places remote from the place of the representations in question, none of them cotemporaneously with, and some subsequently to them, are not admissible evidence. Nor are such statements and solicitations admissible to show that the party making them colluded with the vendor in fact, to procure a sale by the latter for their joint benefit. Nor is a sale, by the party making the representations, of the stock, prior to the alleged fraudulent sale, evidence upon either of these questions.

Where the defendant's intent to defraud is an issue in the action, his own testimony as to the absence of such intent is admissible on his own behalf, and also on behalf of co-defendants alleged to have been acting in concert with him in the fraud; and where defendant's evidence in such an action on that question was excluded by the referee, upon objection that the case was closed, the case being important and the question vital, where the trial had extended over numerous hearings with a liberal course of examination in matters relating to practice, and the previous examination of the witness had not related to such intent, and the examination could not have been understood to be definitely closed,— *Held*, that the exclusion was error.

Where objections on a trial before a referee were taken by the defendants severally to evidence of statements made by their co-defendants, with which they had no privity, on the ground that such statements were not evidence against them, but the statements were admitted, and the finding was that the defendants were jointly liable, and the *court*, upon appeal held such finding to be erroneous,—*Held*, as there was nothing to show that the referee gave any restricted application to the testimony, that it must be presumed that he did not limit it to the party who made the statements, but considered it as bearing upon the liability of all the defendants.

APPEAL by the defendants from a judgment, in favor of the plaintiff for $32,879.14, entered upon the report of a

referee. The facts, so far as they are material, are stated in the opinion of the court.

*Henry R. Selden,* for the respondent.

*John H. Reynolds* and *Tompkins Westervelt* for the appellants.

Present—BARNARD, P. J., TAPPEN and HOGEBOOM, JJ.

By the Court—HOGEBOOM, J. This action was commenced in 1860 to recover from the defendants, jointly, the amount which the plaintiff had paid to the defendants Meigs and Greenleaf, in December, 1856, for 200 shares of the stock of the La Crosse and Milwaukie Railroad Company, then purchased by him from Meigs and Greenleaf.

The claim to recover this amount was founded upon alleged false and fraudulent representations to the plaintiff, by Meigs and Greenleaf, and by the defendant Alden, with whom the complaint alleges that Meigs and Greenleaf were acting in concert and confederacy, to the effect that the stock was valuable, the road in good condition, the business prosperous, and the prospects for the future flattering; but the action was not to recover damages for the fraud, but to recover back the purchase-money, either on account of an alleged failure of consideration in consequence of the subsequent worthlessness of the stock, or on account of an attempted rescission of the contract on account of the fraud; and Alden was made a party defendant upon the ground of his combining and confederating, as alleged, with the other defendants, and himself making similar and additional false representations, which induced the purchase.

Prior to the commencement of the action, a tender of the stock purchased, or of an equal number of shares of the stock, was made to Meigs and Greenleaf, and a demand made upon them to restore the purchase-money, with interest; and it is upon the rescission of the contract thus made, or attempted to

Hubbell *v.* Alden.

be made, on account of the fraud of the defendants, that the alleged cause of action is founded. No tender or demand was made to or of Alden.

There seems to be no sufficient reason for uniting the defendants Meigs and Greenleaf with the defendant Alden as co-defendants in the action. For, although the charges of concert and collusion between them are abundant in the complaint, there does not appear to me to be any sufficient proof that they were combining together, or acting in concert; and the referee has not found the fact. The defendants Meigs and Greenleaf were partners in business and stock brokers in the city of New York, with whom the plaintiff's negotiations for the purchase of the stock were made, and the purchase thereof effected. The defendant Alden was in no wise connected with them in business, or, so far as the proof shows, as I think, in this particular transaction. He was a stranger to the plaintiff, at least until a day or two before the purchase of the stock, when, happening to overhear some conversation between the plaintiff and a friend in the Astor House in New York in regard to the stock of this company and its character and condition, he became a casual participant in the conversation, and made some statements in reference to the subject of such conversation. To this conversation Meigs and Greenleaf were neither of them parties, and of it, so far as we know, they had no knowledge. And so, in regard to the conversation and negotiations had between the plaintiff and Meigs and Greenleaf, Alden was not present at it, nor a party to it, nor in any way, so far as we know, cognizant of it. No previous communication or intercourse between the defendants, having any presumptive or probable reference to this subject, is shown, and no subsequent connection, I think, is established, with any degree of probability, at least not with that reasonable certainty, either of positive or circumstantial evidence, which justifies their being joined as co-defendants or made jointly responsible for the alleged fraud. It is true that Alden came into the office of Meigs and Greenleaf the next day after the interview at the Astor House, while the plaintiff was there

Hubbell v. Alden.

and negotiating or conversing with one of the firm in reference to this stock, and Alden had, at that time, a moment's conversation with the broker Greenleaf; but there is no proof that it had any reference to this subject, and that it had not is expressly testified, both by Alden and Greenleaf. And it further appears that on the same day when these 200 shares of stock were transferred by Meigs and Greenleaf to the plaintiff, Alden also transferred a similar number of shares of stock to Meigs and Greenleaf, but no necessary or probable connection seems to have existed between these two transactions, and they are of too common occurrence in the multiplied transactions of even a single day, in a prominent broker's office in the city of New York, to afford just ground of suspicion.

These are the only circumstances of moment on which the presumption of confederacy between the defendants is claimed to rest; and they seem to me of too slight and unsubstantial a character to justify the allegations of the complaint, or the conclusions of the referee, in that particular.

These circumstances, with some others, are stated in the report of the referee, tending to show dealings between Alden and Meigs and Greenleaf; but the referee has not anywhere found as a fact that they were acting in complicity or collusion with each other, nor, so far as I have discovered, any distinct fact or facts on which he bases, or could with propriety base, his last conclusion of law, to wit, " that the plaintiff is entitled to recover jointly, as well as severally, against all the defendants, upon and for the cause of action stated in the complaint."

His first finding of law is, that the plaintiff is entitled to recover against Alden, as and for the loss and damage sustained by reason of his false and fraudulent representations, the full sum paid by the plaintiff for the stock, with interest, after deducting dividends. The action is not brought to recover such damages, leaving the stock on defendants' hands, but to recover the purchase-money, as upon a rescission of the contract.

If it were brought simply for damages, the requisite facts upon which to found a right to recover, at least for the full amount, are lacking, I think, both in the report of the referee and the proof in the case, to wit, that the stock was worthless at or for a reasonable time after the making and consummation of the contract of purchase, and that the discovery of the alleged fraud and the repudiation of the contract were made in the exercise of reasonable diligence.   So far as I have been able to discover, there is a dearth of evidence of any marked depreciation in the price of the stock for a very considerable time after the consummation of the contract, and, indeed, till the general crash of 1857; at least, we have not been referred, in the points or argument of counsel, to the evidence showing the depreciation or otherwise of the stock; an omission which had seemed to me quite remarkable, in view of the ground upon which the referee seems to have based the plaintiff's right to recover against Alden, and in part against Meigs and Greenleaf, to wit, as against the former, damages produced by the fraud, and, as against the latter, a failure of consideration.

The question then arises, if a joint action is not maintainable against the defendants, can it stand against either, or, rather, as the plaintiff has obtained his verdict or report and judgment against both jointly, can full justice be done to the parties without setting them aside, as to all the defendants, and putting the plaintiff to a new trial of the issues?   Certainly, if the action is not maintainable against all, the referee committed a legal error in maintaining the contrary, and there would be no especial hardship of which the plaintiff could rightfully complain, if, after having persisted in claiming the joint and accumulated liability of all the defendants, and refusing to elect between them, and thus inducing the referee to commit a legal error which all of the defendants were obliged to come here to correct, he should pay the ordinary penalty of the hazards and contingencies of a new trial in regard to all the defendants against whom he has obtained an illegal and unfounded judgment.   If the plaintiff had originally prosecuted only the

proper party, the other would have been relieved of the anxi-
eties and expense of a burdensome litigation ; and even if the
plaintiff had elected on the trial against whom he would pro-
ceed, or the referee had then compelled such election, the other
party would at least have been relieved of the future costs, as
well as have obtained the judgment of the court for those
already incurred.   But it will be said that the law abhors use-
less litigation, and, as the defendants have had every opportu-
nity for defence, and the plaintiff would be able to establish,
on a re-trial, a case precisely as strong against the delinquent
defendant, the case as to such defendant might as well be
sustained now, the action severed, the judgment affirmed,
as to such party, while it is set aside and a new trial granted
as to the other.   But suppose the case to be equally strong
against both defendants ; assuming Alden to be one defendant,
and Meigs and Greenleaf another defendant, but no joint lia-
bility between them to be established ; then, what course
should be taken ?   It is true we might impose, as a condition
to our judgment, an obligation upon the plaintiff to elect as
to which party he would have the judgment to stand.   Of
course, he would elect the party whom he supposed to be most
responsible pecuniarily ; but I think it would be as fair jus-
tice, looking to the rights of all the parties, to subject him to
the consequences of a new trial, and leave him to such remedy
as on, or previous to, such new trial, he should be advised to
take.   But, in this case, there is a further difficulty in the way.
In the first place, this is not an action of tort, but upon con-
tract; that is, it is founded upon the implied agreement or
legal liability to return certain moneys paid upon contract,
which contract, for some legal reason, whether founded upon
fraud, mistake, entire change of circumstances, or other ground,
the party had a legal right to rescind.   It is, therefore, an
action to recover back moneys which, in equity and good con-
science, the contract being avoided, the defendants ought to
repay.   This is the evident scope and frame of the complaint,
and the pleader has added a second count of *indebitatus
assumpsit*, thus unmistakably characterizing the form of

action. Now, strictly speaking, this action, considering its character and the relief sought, cannot be properly severed, although it is, perhaps, within the power of the court to make such severance, if the interests of justice imperatively require it. But, suppose the severance to be made, and suppose, further, as the sequel will show is our opinion, that in our view the case for the plaintiff, on the ground of fraudulent representations, is stronger against the defendant Alden than it is against the defendants Meigs and Greenleaf; and suppose, on that ground alone, as well as in accordance with the request contained in the plaintiff's points, we should decide to hold Alden as the defendant in the action, discharging Meigs and Greenleaf, or granting a new trial as to them, we should, in my opinion, be obliged to grant a new trial as to Alden also.

The pleadings and cause of action must be homogeneous against all the defendants. It cannot, as it seems to me, be an action of tort against Alden, asking damages for a fraud, and leaving the subject of the purchase in the hands of the plaintiff, and an action on contract against Meigs and Greenleaf, claiming a right to recover back the purchase-money, because the contract has been rescinded for fraud or failure to correspond with the defendants' representations. The rule of damages is different. In the latter case it is the whole purchase-money and interest, the purchase being annulled; in the former, it is the damages which the party has sustained by being burdened with property of less value than the representations would indicate. As a cause of action, therefore, against Alden, seeking to recover damages in tort for a fraud, the action is not maintainable, because no such cause of action is counted on in the complaint, nor framed against the other parties.

And as a cause of action against Alden, founded upon a rescission of a contract, the cause of action is not maintained, first, because, if they are not jointly liable, there was no contract with Alden, and, secondly, because it is neither alleged nor proved that the indispensable prerequisite to the maintenance of such a

cause of action, to wit, the tender back of the stock and the demand of the purchase-money, had ever been made to and of the defendant Alden. In truth, the action, in its present shape, is not maintainable at all against Alden, except upon the theory that he was acting in concert and combination with Meigs and Greenleaf, and, therefore, identified with their contract and their refusal to receive back the stock and repay the money; and if this bond of connection between them is removed, Alden becomes no longer a fit party to this action, whatever might be the case in a suit for damages on account of the fraud, and the action fails as to him. I shall presently argue that, as against the defendants Meigs and Greenleaf, it must fail for want of proof; and, in this aspect of the case, if we are right in these conclusions, the very best service we can render to the plaintiff is to grant a new trial, to enable him to take such ulterior measures as are called for by this condition of the case.

There is still another reason, as it seems to me, why, if this action is not maintainable against the defendants jointly, a new trial should be granted as to all. There could not, that I can discover, have been any just foundation for the conclusion of the referee that the defendants were jointly liable, except that they were jointly interested in the contract, or conspired and colluded together to defraud the plaintiff. He must, therefore, have arrived at such a conclusion, although he has not declared it in his report. As a consequence, he must have held each liable for the acts and representations of the others. We are not, therefore, in a condition to tell, in this aspect of the case, whether the referee based the right to recover, as against Meigs and Greenleaf, and as against Alden, on their own individual statements, or those of their co-defendant, or partly on both; and I think we are not called upon to make a new case, and determine, as an original question (what the referee has not done), whether the action is maintainable against either of these parties, separately, for their several acts and representations. (See *Ely* v. *Steigler*, 9 Abb., 35; *Ely* v. *Mumford*, 47 Barb., 632.)

Hubbell *v.* Alden.

Assuming the action to be severable, I am of opinion that a sufficient cause of action is not established against Meigs and Greenleaf. They were the brokers selling the stock, and not at a price differing appreciably from the then market value of the stock. They are said to have made certain representations; but, in addition to the fact that their statements were at least in part true, none of them are shown to have been willfully or fraudulently false, and all of them appear to have been mere matters of opinion or information, in regard to which they did not profess to have personal knowledge. It seems highly probable that the pleader was apprehensive that he could only establish a firm and reliable cause of action against Meigs and Greenleaf by connecting and identifying them with Alden, and making each responsible for the representations and contracts of the others.

Hence we think that, at all events, as to the defendants Meigs and Greenleaf, there should be a new trial on the merits, independent of any question of evidence in the case.

And we are somewhat inclined to the same conclusion in regard to the defendant Alden. For, although his representations, if they are to be deemed such, were more decisive, varied and far-reaching in character than those of the defendant Greenleaf, and a stronger presumption of their having been made with guilty knowledge arises, if they were in fact false, yet I have not been entirely without doubt or hesitation in regard to two points connected with them, namely, first, whether they were, in fact, representations, in the legal sense of the word, whether they were anything more than casual, unpremeditated and irresponsible statements, obtruded into a conversation between other persons with which he had nothing to do; and, second, whether they were statements for which he meant to be, or had any idea that he was, or was expected to be, responsible; whether the plaintiff had a right to pick up such loose, detached and accidental remarks of a mere stranger, and, at his own election, give to them the character and clothe them with the responsibility of representations in law, for the falsity of which an action would

lie. I doubt very much whether Alden regarded them in that light, or meant to be responsible for them, in any legal sense; or to the plaintiff as a party toward whom he was occupying any legal relation or responsibility. The plaintiff did not give him the most distant intimation that he was treating them in that light; he made no attempt whatever to negotiate or traffic with him; and Meigs and Greenleaf not only had had no previous understanding or arrangement with him that he should assist them, or they him, in the sale of this stock, but nothing subsequently occurred, as I have already endeavored to argue, to show any connection with them. If Alden is to be held, therefore, on these representations, he stands in the attitude of a mere volunteer, expressing himself, it is true, with great freedom and perhaps with some looseness, in regard to this company, its character, its stock and its prospects, but neither seeking nor contemplating any contract with the plaintiff, nor anticipating any contract between the plaintiff and the other defendants, and not realizing or expecting to realize a particle of profit from the contract subsequently made.

It is possible, it is true, that there may have been, under and behind all this, that fraud which devises ingenious modes and forms to escape detection; but before we fasten upon a party all the legal consequences, as well as the moral turpitude, of such a fraud, it should be made at least reasonably apparent. For myself, I have sufficient doubt on the subject not to be unwilling to have the question again submitted to the arbitrament of another equally impartial tribunal with that which originally adjudicated the rights of the parties.

I am, however, relieved from a conclusive determination of this question by a consideration of some questions of evidence upon which I think the referee fell into error, and which will, I think, make it necessary to remand the cause for a new trial.

I think the evidence of Albert Brisbane was erroneously admitted as against all the defendants.

Brisbane was a real estate agent in Buffalo, who had one or

Hubbell v. Alden.

more interviews with Alden in relation to the La Crosse and Milwaukie railroad. Plaintiff offered to prove, and, under objection and exception, did prove, that Alden solicited the witness strongly at several times to buy stock of that road, as it would be a great speculation; and the witness was then permitted to detail at length the statements which Alden made to him, in the fall of 1856 and the winter of 1857, as to the large dividends the company would make, and the bonds which would be issued to the stockholders of the eastern branch, giving them an interest in the land grant, which would be very valuable. These conversations extended from September, 1856, to the spring of 1857, and were, of course, made when neither of the other defendants nor the plaintiff was present, to whom they were not communicated; some of them being, in fact, several months after the consummation of the purchase of the stock in question.

For these reasons the testimony seems to me wholly inadmissible and improper. They had not the remotest connection with the transaction under consideration, and were calculated improperly to influence the mind of the referee. I think they were not admissible under that rule of law which, in some instances (they ought to be very few), allows cotemporaneous acts and statements, of a similar character to those which are the subject of the action, to be introduced in evidence to throw light upon the motives of the party in the particular transaction. None of those were cotemporaneous with the one in question. Some of them were a considerable time subsequent. They were made at a place far removed from New York, and could reflect no reliable light upon the questions in controversy, and tended, in no safe or legitimate sense, to show that the representations to plaintiff at the Astor House were false and fraudulent.

The further evidence that the witness purchased stock of the company, of Alden, in August or September, 1856, was subject to a similar objection, for similar and, perhaps, more forcible reasons. It was a transaction wholly aside from the one in controversy, at a time considerably removed from it,

and was not of a character that it would be safe to argue, by analogy, from the effect Alden's statements had upon the mind of Brisbane, to the effect that those in this case would be likely to have upon the mind of the plaintiff.

The evidence of Leonard W. Jerome was of a similar but perhaps more objectionable character, and was received under similar objections. The purchase of stock made by this witness was made on the 19th of July, 1856, and the conversation allowed in evidence as to the condition, character and prospects of the company was had, as the witness expresses it, " along during the year 1856." The probability would seem to be that it was previous to Jerome's purchase of stock. Through the door thus opened, the statements of Alden, going generally into the character and condition of this company, were admitted in evidence; and offered, as they were, for the purpose of showing that, along in the year 1856, Alden was exaggerating the value of the stock and the soundness of the company, and impossible to have had the slightest effect upon the contract of the plaintiff, I think they were greatly calculated to prejudice the case of the defendants.

The conversations had with Frederick L. Yates, of a similar tenor, though of dates considerably more removed from the present transaction, would be subject to similar condemnation if offered for the purpose of showing the making of false representations to other parties, and, to some extent at least, they seem to have been offered with that view; but there is some reason for supposing that they were, in part, offered as admissions by the defendant Alden of facts tending to show the falsity of some of his representations to the plaintiff. Regarded in that light, they would seem to have been admissible, if the time to which they refer is sufficiently near to that in controversy to indicate the condition of the company at the same period.

If the foregoing views are correct, the evidence of New comb Cleveland as to conversations with Alden would also appear to be objectionable in the following particulars:

Hubbell *v.* Alden.

1st. As to whether he had put in a bid for the same work as Alden.

2d. As to conversation had with Alden in regard to the affairs of the company in 1856 and 1855.

3d. As to the refusal to allow the witness to state whether he regarded the conversation with Alden as bantering and jocose or serious.

I think the offer to examine the defendant Greenleaf, as to the absence of an intent to defraud in the negotiations and contract with the plaintiff, was erroneously overruled.

It was objected to, it is true, upon the ground that the examination had been closed; but, in a case of so much importance, on a question so vital, occupying so many different hearings on many different occasions, where the course of examination on matters relative to mere practice had been liberal, where the previous examination of the witness had not related at all to that aspect of the case (the question of intent to defraud), and where the examination would not have been understood to have been definitely and finally closed, it seems to me the referee ought to have taken the evidence, and that his refusal to do so was error.

If the technical objection is removed, then on the merits the evidence seems to me to have been clearly admissible and important.

The right to recover in this case was largely dependent upon the existence of an intent to defraud the plaintiff on the part of the defendants.

Any evidence, whether circumstantial or direct, which conduced to establish the fraud, was admissible on the part of the plaintiff. The plaintiff would undoubtedly have had a right to show the admissions of the defendants acknowledging the fraud, and, as it seems to me, clearly also the sworn evidence of the defendants themselves (if they could rely upon it) tending to establish the same thing.

The same course of examination was open to the defendants. And, as either party was an admissible witness for himself or his adversary, the defendants would have had a right to

repel the presumption or existence of fraud by their own evidence or the evidence of the plaintiff. So long as the degree or instruments of evidence offered were not objectionable, any fact which they could prove was admissible to be proved by them. The question of intent to defraud was a vital issue in the case; and if he would tell the truth, no one could speak with more emphasis or certainty upon that subject than the witness under examination. Besides, he was an important witness for his co-defendant Alden on that subject, as well as his partner and himself; because if, as was the theory of the plaintiff, they were acting in concert and combination, so as to make the one liable for the acts of the others, then Alden was responsible for the frauds of Greenleaf, and it became important to him to repel, in all possible ways, any presumption of fraudulent intent in Greenleaf.

The right to examine this witness on this point rests upon similar principles to the right of proving by the plaintiff that he believed and confided in the representations of the defendants, and was induced thereby to make the contract in question. The latter evidence was admitted on this trial, and was plainly admissible, but not more so than that offered by the defendants and rejected. (See *Thorn* v. *Helmer*, 2 Keyes, 27; *King* v. *Fitch*, 1 id., 432.)

But I think the subject is not open for discussion, and, since the case of *Seymour* v. *Wilson* (4 Kern., 567), must be held to be, as it has been treated, as *res adjudicata*. It is not, I think, at least, open for review in this court. (*Griffin* v. *Marquardt*, 21 N. Y., 121; *Forbes* v. *Waller*, 25 id., 430; *Thurston* v. *Cornell*, 38 id., 281; *Bedell* v. *Chase*, 34 id., 386; *McKown* v. *Hunter*, 30 id., 625; *Pope* v. *Hart*, 35 Barb., 630; *Mathews* v. *Poultney*, 33 id., 127.)

A very large number of the objections, both on the part of Meigs and Greenleaf and on the part of Alden, is founded on the idea that their respective statements are not legitimate evidence against their co-defendants. They were admitted upon the theory that the action was divisible, and that they were, at all events, evidence against themselves; generally a

Hubbell v. Alden.

sound theory, where the action is *ex delicto* and severable as to the parties, and very properly put in practice where the evidence is not much developed and the combination or collu-. sion between the parties expected and likely to be established, but then introduced under the limitation and condition that, unless concert or joint liability is established, the evidence will not be admitted against other parties than those who themselves make the admission; and if such joint action or liability fails to be established, making it necessary that the testimony should be carefully limited to the parties making the admission.

Much testimony, as I have said, was introduced of this character, and, so far as we know, it was never struck out or limited. And as the referee came to the conclusion that the defendants were jointly liable, we may conclude that it was received and acted upon as against all the parties. As we have held that there was no sufficient evidence of collusion or joint liability, this action of the referee would appear to have been erroneous; and I incline to think that on this ground alone there should be a new trial.

I think we must not infer, in the absence of any statement of the referee to that effect, that he limited the application of the evidence to the party making it, but rather the contrary, because he has proceeded upon a basis which would admit the testimony, and was bound, I think, in some way, to note that he gave it a restricted application, if such were the fact.

I have thus discussed a few of the aspects which this voluminous case presents. There is a large number of other questions, of a serious character, which invite and would reward discussion. But having come to the conclusion that those already considered necessarily lead to a reversal of the judgment and the granting of a new trial, I have not thought it necessary to bestow the further time and attention upon the other questions in the case which would be necessary for their full investigation and satisfactory determination.

In the new trial which must take place the parties will have a fresh opportunity to present the facts which bear upon the

merits of the action, and, perhaps, to throw additional light upon the aspects of the case which, in the interests of truth and justice, will bear an additional degree of illumination, and also, if necessary, so to model the pleadings and issues in the action as shall charge the parties really culpable and liable, and none other. The truth is not likely to suffer under these increased opportunities for presentation and development, however much, for some reasons, it might be desirable that a litigation already protracted and expensive should be brought to a close.

The judgment entered upon the report of the referee must be reversed, and a new trial granted as to all the defendants, with costs to abide the event.

Ordered accordingly.