Tompkins v. Wadley, appellant.

*Evidence — opinion of witness — impeaching witness — limitation of inquiry as to character — evidence in mitigation of damages admissible without being pleaded.*

In an action for a breach of promise of marriage, a witness for defendant who had testified to an interview with plaintiff, in which plaintiff had spoken concerning defendant, was asked what her (witness') opinion, from the manner of plaintiff's speech, was, as to her (plaintiff's) respect for the defendant. The witness was not shown to have any intimate acquaintance with plaintiff. *Held* (per Morgan, J.), that the witness was not qualified to express an opinion as to the state of plaintiff's affection toward defendant.

Evidence was offered as to plaintiff's character twenty-seven years previously, while living at S. She had lived during the intervening time within six

miles of S. *Held*, that the circuit judge had discretion to limit inquiries as to character to within twelve years previous to the trial, and such limitation was proper to be made. The proposition that an inquiry as to character cannot be limited as to time should be confined to cases where there is some connection shown to exist between the present and the former period, or where present character may be fairly inferred from previous bad character.

Defendant offered to show in mitigation of damages an act of adultery by plaintiff prior to a former marriage, and more than twenty-five years previous, and while plaintiff was very young. *Held*, admissible, although no such defense had been pleaded. Mitigating circumstances may be proved without being pleaded.

APPEAL from a judgment on a verdict for plaintiff and from an order denying a motion for a new trial. The action was brought by Olive E. Tompkins against Perley K. Wadley, for an alleged breach of contract of marriage. The answer was a general denial.

On the trial at the Jefferson circuit, in October, 1872, it appeared that both parties had been once married before. The plaintiff was 53 years of age, and was the mother of three children, aged, respectively, 25, 22 and 10. The defendant was 52 years of age, was a man of some property and had no children. The plaintiff's first marriage was when she was 16 years old, and her husband died in 1870. She and her husband lived on the plaintiff's farm four years prior to 1863, and she had lived in the town of Watertown twenty-seven years, ever since her first marriage. The alleged promise of marriage was made within a few weeks after the defendant's wife died. She died September 18, 1870. In the progress of the trial, several exceptions were taken to the rulings of the judge as to the admissibility of testimony, which are noticed in the opinion.

*Levi H. Brown*, for appellant.

*Starbuck & Sawyer*, for respondent.

MORGAN, J. There is nothing in the case to show that the verdict is wrong on the merits, and the only questions to consider are, whether any of the exceptions taken by the defendant's counsel on the trial are well taken, and call for a reversal of the judgment and a new trial.

Some of the questions discussed on the trial of this action are of a novel character, and require a more extended examination than I have been able to give them. The first question arises out of the

ruling of the judge, excluding evidence. To understand it, the occasion should be noticed which called out the inquiry. The witness who was called on behalf of the defendant to disprove the promise of marriage, testified that in August, 1871, she met the plaintiff on the sidewalk and called her Mrs. Wadley, saying "how do you do, Mrs. Wadley;" told her she had heard she was married; in reply to which the plaintiff said she was not married and was not agoing to be; that she was going west; that any body must be sick to want Wadley. The witness answered that he had lots of money, to which the plaintiff replied, she was not going to marry him, she was going west. Then comes the question put by defendant's counsel: "Will you tell us what the manner of Mrs. Tompkins was in speaking;" "what your opinion, from the manner of her speech, was, as to her respect for Wadley?" The judge held that the witness might describe her mannerism — her utterance, etc., but could not give the opinion called for by the question. The defendant's counsel contended that the witness might give an opinion as to whether the plaintiff manifested affection or otherwise for the defendant. The judge overruled the evidence as to what witness' opinion was, to which there was an exception.

Cases are cited to show that it would be competent for the plaintiff to inquire of one who was acquainted with the deportment of the parties to each other, to express an opinion derived from observation, as to their attachment to each other, for the purpose of enhancing the damages. 1 Greenl. Ev., § 440. The rule as stated in Greenleaf is as follows: " In an action for breach of promise to marry, a person *accustomed* to *observe the mutual deportment of the parties* may give in evidence his opinion upon the question whether they were attached to each other." In the same section an authority is cited to show that a medical man cannot give his opinion that a *particular act*, for which the prisoner is tried, was an act of insanity. *Rex* v. *Wright*, Russ. & R. 456. In *McKee* v. *Nelson*, 4 Conn. 355, the witnesses lived in the same house with and continually associated with the plaintiff as members of the family, and they were permitted to give their opinion, whether from an attentive observation of her *whole deportment during courtship*, the plaintiff was sincerely attached to the defendant. The ground of the decision was that the various facts upon which an opinion of the plaintiff's attachment must be founded were incapable of specification so as to leave it, like ordinary facts, as a matter of inference to the jury. It was also observed, by the

court, that "The opinion of witnesses on this subject must be derived from a series of instances, passing under their observation, which yet they could never detail to the jury."

In the case at bar, the witness, Mrs. Gibbs, was not shown to have had any intimate acquaintance with the plaintiff so as to qualify her to give an opinion derived from her general deportment toward the defendant. She had visited her once after the engagement or about the time, and had entered into some conversation as to her relations toward the defendant — where she also saw the defendant.

Nothing took place then to attract her attention as to the state of affection which the parties entertained toward each other. What took place when she met the plaintiff in the street has been stated. From this short interview it is claimed that the witness was qualified to express an opinion as to the state of her affection toward the defendant. The conversation is given in detail, so that the jury might have all there was of her language — all there was, except the witness' opinion as to whether she manifested affection or dislike to the defendant. It has been observed by judges in some of the cases cited, that the exceptions to the general rule, that witnesses cannot give their opinion, ought not to be extended. The court refused to extend it in *De Witt* v. *Bailey*, 9 N. Y. 371, holding, as I understand the decision, that the witness must have the necessary qualifications to enable him to give an opinion. The necessary qualifications to enable a witness to give an opinion in the case at bar, under the rule laid down in Greenleaf's Evidence, would be, that she was in a situation to observe the plaintiff's general deportment toward the defendant. A single interview, under the circumstances narrated by the witness, could not have qualified her to give an opinion of the state of the plaintiff's affections toward the defendant, except what her words plainly indicated; and the jury could not have been enlightened, to any appreciable extent, by the opinion of the witness as to what she thought from her conduct on that single occasion. Although the judge may have based his decision to exclude the evidence upon grounds not entirely satisfactory in a legal point of view, I am of opinion that the decision was right, and that the exceptions ought to be overruled.

Another exception is taken to the judge's refusal to allow the defendant to give evidence as to the plaintiff's general character, going back to the time of her marriage and when she was a young girl. The question was propounded to Mrs. Anna Clark, who stated

that the plaintiff lived in Sackett's Harbor at the time and removed from thence a year after her first marriage. Sackett's Harbor was proved to be about six miles from Watertown. The question evidently called for the reputation of the plaintiff while a young girl and up to the time of her marriage, *twenty-seven years* before she was sworn on the trial — not her character in Watertown where she afterward resided. The judge excluded the evidence, observing that the law would charitably allow a young girl to acquire a good character after being a married woman for twenty-five years. Before ruling out the question, the judge also stated that in his opinion the evidence was too remote, but he would allow the counsel to go back twelve years. As a matter of discretion he thought he ought to restrict the time to that number of years. The counsel of the defendant availed himself of the liberty granted and called two or three witnesses to show what her character was in the neighborhood where she had resided for over twenty-five years. This inquiry was confined wholly to her character for truth; and to say the most of it, was not entirely successful.

The question presented by this exception is not very easily disposed of. If the judge had any discretion in such a case, I think it was wisely exercised in limiting the inquiry to a later period. It is said that if the defendant had a bad character at Sackett's Harbor before she was married, the presumption is that it continued. But if it continued, there would be no difficulty in proving it bad within the last twelve years. There is, therefore, no occasion to go back twenty-five years to show what this woman's character was at the time of the trial. She had lived in one neighborhood twenty-five years, within six miles of Sackett's Harbor, where it is said her character was bad twenty-five years ago. If she had been absent, so that her character could not be easily traced through the intervening years, I admit that there would be good grounds for going back as was proposed in this case. The question, therefore, seems to resolve itself into this, whether the judge has any discretion to limit the inquiry in point of time. I think no case has been cited which clearly decides this precise question. The court has allowed the judge on the trial to limit the number of witnesses who may speak as to general character. Of course if the judge should abuse this discretion the appellate court would grant a new trial. The judge ought to have some discretion as to the limit of such an examination. Take the case of a school girl who, for some fault, acquired a

bad reputation in her neighborhood; she afterward marries and raises up a family of children. After she arrives at the age of sixty or upward, she is called into a court of justice to be a witness. Can it be that this early scandal can be uncovered to wound her feelings and disgrace her family? Certainly the law does not require the judge to allow counsel to perpetrate such a cruelty. The real question is, what is the general character of the witness at the time of trial; and the inquiry should be limited to such time as will enable the jury to determine that question. A *life-time* is but little over twenty-five years, and it would be a very peculiar case which would authorize the inquiry to go back of that to ascertain the present character of the witness. Twenty years furnishes a legal presumption of payment, and is a bar to many claims made after that lapse of time. As the witness had always lived in one neighborhood there could be no excuse for going back beyond twenty years to learn her character. In cases, therefore, where the judge can see that the object of going back of twenty years is to revive a scandal, to wound feelings of the witness, without enlightening the jury, I think it is his duty to interfere.

The question has been alluded to in several of the cases cited, and was discussed by Judge COWEN in *People* v. *Abbott*, 19 Wend. 192, and by Judge BEARDSLEY in *Sleeper* v. *Van Middlesworth*, 4 Denio, 431. In the latter case the judge evidently supposed there could be some limitation. He says: "It might be too much to say that a character when once formed is presumed to remain unchanged for life. Still the law, founded on the full knowledge and just appreciation of the general course of human affairs, indulges in a strong presumption against any sudden change." This is all that was decided in *Rothburn* v. *Ross*, 46 Barb. 127. The late justice T. R. STRONG, on the argument in that case, at p. 133, supporting the admissibility of the evidence as to the witness' character five years before the trial, conceded that there might be some discretion to limit it to a shorter time. "Assuming," he says, "that the judge might exercise a discretion as to the period to which the inquiry as to character should extend, it was not an arbitrary discretion, but one of a sound judicial character subject to be reviewed."

This, I think, is a true statement of the rule which ought to be adopted.

In *Thorn* v. *Helmes*, 2 Keyes, 27, the decision goes no farther than to hold that it is not error for the judge to permit the inquiry to

go back eight or ten years. S. C., with opinion of CAMPBELL, J., '37 How. 279.

It is said by some of the judges in the cases cited, that the inquiry, from its nature, cannot be limited as to time. But this can only be true as a general proposition.

It should be confined to cases where there is some connection shown to exist between the two periods of time, or where present character may be fairly inferred from former bad character. As suggested by the judge on the trial of this action, and conceded by Judge BEARDSLEY in *Sleeper* v. *Van Middlesworth*, the law of charity is not to be excluded in the consideration of the question.

The point of inquiry is, what is the general character of the witness, not what it has been at some former period. The latter inquiry can only be important when it tends in some reasonable degree at least to aid the jury in determining present character.

My opinion is, that the exceptions to the ruling of the judge were not well taken, and should be overruled.

Another exception is taken to the decision of the judge overruling an offer of the defendant to prove that the plaintiff committed an act of adultery while she was a girl and before her first marriage. This evidence was offered in mitigation of damages. The judge overruled the evidence because no such defense had been set up in the answer.

The decision of the judge was clearly erroneous. Mitigating circumstances may be proved without being pleaded. *Harter* v. *Crill*, 33 Barb. 283; *Travis* v. *Barger*, 24 id. 614; *Kniffen* v. *McConnell*, 30 N. Y. 290.

The fact that the plaintiff had committed an act of adultery, before her first marriage, would very probably be regarded as of some consequence by a man who, in ignorance of it, had promised her marriage. The jury would have given the evidence a proper consideration, and may have reduced the damages if the fact had been clearly established. Such an inquiry, relating to the character of the plaintiff for chastity, cannot be excluded in this class of actions, however great a severity it may be on a woman to rake up a transaction of by-gone times. *Bench* v. *Merrick*, 1 Carr & Kirwan, 467. If not a complete defense when properly pleaded, the fact may be proved in mitigation. *Id.;* and see Mayne on Damages (2d. ed.) 74, 376. An act showing a want of chastity cannot be obliterated or recalled by the lapse of time.

It seems to be the rule, that any fact which would materially diminish the happiness to be expected from the marriage may be given in evidence to reduce the damages. Mayne on Damages, 74. It cannot be said that the fact offered to be proved in the case at bar would not have some effect upon the marriage relations of the parties, although it occurred while the plaintiff was very young, and had been measurably forgotten in the lapse of time. The proof, if admitted, may not have influenced the jury to reduce the damages in this particular case under the circumstances detailed in the evidence, but we cannot say that it was wholly immaterial upon the question of damages.

This exception, we think, ought to be sustained and a new trial granted, costs to abide the event.

All concurred as to the last exception discussed in this opinion.

SMITH, J., also concurred in the opinion, that the judge on the trial had discretion to limit the inquiry as to time, subject to review in case of abuse.

MULLIN, J., was not ready to express a decided opinion, but was inclined to believe there might be cases where the inquiry should be under the control of the judge.

*Judgment reversed and new trial granted.*