## HARRIS v. HANIE ET AL.

1. VENDOR'S LIEN: *None for performance of an act.*
   A vendor's lien is a creation of equity—is unknown at law, and arises
   to secure the payment of purchase money, but not to secure the
   performance of an act, the non-performance of which would make
   a claim for unliquidated damages.

2. SAME: *None, where land sold for cotton.*
   Where one sells land for cotton, to be afterwards delivered, he has
   no lien on the land for performance. The non-delivery creates no
   debt, but only an injury sounding in damages, which equity will
   not liquidate, and then declare a lien to pay them.

3. BILL OF REVIEW: *Vacating decree; Lien, etc.*
   Estes executed to H. Harris, for land purchased of him, two obliga-
   tions to deliver cotton at Christmas, 1877 and 1878, respectively.
   Harris transferred the first, with his lien on the land, to Hanie,
   the other, to J. R. Harris. Hanie sued in equity to enforce the
   vendor's lien for his obligation, not noticing J. R. Harris' interest;
   and pending the suit, he and Estes and J. R. Harris submitted
   their rights to arbitrators, who awarded that Hanie should accept
   a designated forty acres of the land, and one hundred dollars from
   Estes, and deliver up the first obligation; that the balance of the
   land stand as security for payment of the second obligation held
   by J. R. Harris, and that Hanie assume the payment of that obli-

gation, and upon payment, Estes should convey to him the bal-
ance of the land  The award was accepted and ratified by the par-
ties.  Afterward Hanie and Estes, without notice to Harris, had a
consent decree entered in the pending suit, to sell the land in pay--
ment of the first obligation.  Upon a bill by Harris to review and
set aside the decree, and enforce his equities.  *Held:*  That there-
was no vendor's lien for the enforcement of the obligation; that
Estes could not create a lien against Harris by consenting to the
decree; that Harris was not prejudiced by it, and could not main-
tain a bill of review; but the decree, after the arbitration, was a
fraud upon him, and the bill would be retained and the decree-
vacated.

4. ARBITRATION:  *As at common law, good.*

An arbitration, as at common law, which appears regular and unim--
peached by facts or denials, is of the very highest authority.  The
question in controversy is as fully determined, and the rights of
the parties as fully settled as could be by their own agreement or-
the judgment of a court.

APPEAL from *Dorsey* Circuit Court in Chancery.
Hon. T. F. SORRELLS, Circuit Judge.

*T. B. Martin and R. L. Elliott*, for appellant:

The award of the arbitrators, *ratified in writing*, was an
accord of the original contract, and constituted a new con-
tract, by which Hanie's right to sue on the original, if not
*annulled*, was suspended.  30 *Vt.*, 424; 28 *Conn.*, 392;
4 *Iowa*, 219; — *Barb.*, *N. Y.*, 485; *Parsons on Cont.*, 2
*vol.*, *secs.* 681 and 683.  This ratification and Hanie's false
statements, that he would dismiss the suit, induced appellant
to take no action to save his equities in the suit by *Hanie* v.
*Estes.*  Add to this Estes' fraudulent statements, and the
conclusion is irresistible that the decree was obtained by
fraud.

Appellant was a *necessary* party.  *Penn* v. *Hayward*, 14
*Ohio St.*, 302, 306; *Newman Pl. and Pr.*, 192, 201; *Jen-*

*kins* v. *Smith*, 4 *Metc.*, 384 ; 13 *B. Mon.*, 211. If not a *necessary*, he was a *proper* party. *Gantt's Digest*, 4476 ; 41 *Ind.*, 339 ; 25 *N. J. Eq.*, 41 ; *Ib.*, 112.

The demurrer admits that the decree attacked was obtained by fraud, and the injunction should have been made perpetual, and the proceedings reformed so as to allow appellant to assert his rights. 17 *Ark.*, 512 ; *Hump. Ct. Ct. Rep.*, 251 ; *Freeman on Judgments*, secs. 99–100.

The obtaining possession of the note, delivered to Estes, etc., upon his false and fraudulent statements, which he knew to be untrue, was a fraud and the court erred in not granting the relief sought. 23 *Ala.*, 312 ; 25 *Tex.*, 148 ; 32 *Ala.*, 427 ; 16 *Ga.*, 432 ; 5 *J. J. Marsh (Ky.)*, 96 ; 5 *Hoyn. (Tenn.)*, 248 ; *Law Reporter VIII.*, Nov. 12, 1879, *p.* 173 ; *Goodwin* v. *Robinson*, 30 *Ark.*, 535.

EAKIN, J. Hilliard Harris, in 1876, conveyed to Estes some lands, in consideration of two written obligations by Estes to deliver him certain amounts of cotton, one-half on or before Christmas, 1877, and the other half on or before Christmas, 1878. The first he assigned to W. N. Hanie, with the lien, if there was any which he could assign. The second he afterwards assigned to J. R. Harris, the appellant.

It may be gathered from the allegations of the bill in this case, taken with the reasonable inferences, which must suffice in the absence of a motion to make more specific, that early in 1878, Hanie filed a former bill against Estes, claiming a lien upon the lands for the value of the cotton, to have been delivered at Christmas. He mentioned the existence of the other obligation given, also, as part of the consideration of the purchase by Estes, which he said Harris had assigned, but he did not know to whom. J. R. Harris,

the holder and complainant in this case, was not made a party, and did not appear.

It appears, however, that Hanie must have found out soon, that the present complainant was the owner. On the seventh of March, 1878, he and complainant, and Estes, the obligor and respective owners of the two instruments, executed amongst themselves, without any order of court or reference to the pending suit, articles of agreement by which they referred their rights regarding the subject matter to a board of five arbitrators, who made an award, as follows:

1. That Hanie should give up his note (as it is called) which he held against Estes, and should accept a forty-acre tract of the same land which Estes seems to have sold to one J. Hanie. Who J. Hanie was, does not appear, but as Hanie was the son-in-law of Estes, it was probably his wife, or near relation.

2. That Estes repay to said W. N. Hanie a hundred dollars, which had been paid on the purchase money of said forty acres.

3. That this complainant, J. R. Harris, should hold his note, and that the land purchased of Hilliard Harris should stand as collateral security for its payment: and—

4. That Hanie assume the payment of complainant's note, and, when that should be done, Estes should convey him the remaining interest in the land.

This award was duly approved and ratified, under the signature of the three parties concerned.

The bill charges, that notwithstanding this arbitration, and whilst Hanie and Estes were both professing to be willing to abide by it, they conspired together to defraud him; and, at the September term, 1878, of the Circuit Court, caused a consent decree to be entered in the pending suit, in Hanie's favor, against Estes, for $319, as for the value of the cotton due

on Hanie's note, which was declared a lien upon the land; and a commissioner was appointed to sell. That both Hanie and Estes represented to him that the suit had been dismissed. That Estes told him he had fully settled with Hanie, who had given up his note. That he offered complainant to make him a deed of all the lands remaining, after the sale of the forty acres to J. Hanie, if he would give up his note also. That he consented, did so, and received the deed. That the cotton due on Hanie's note was not worth more than $200. In short, that the whole was a plan concocted and executed to deprive complainant of all benefit of his note, He says that Estes has his note and is insolvent, and that Hanie has been in enjoyment of the property for two years before the decree, the rents and profits of which will cover his claim,

He prays that the decree may be revised so as to protect his rights. That, on a final hearing, his note may be restored, and the deed to him be cancelled, or that he have a conveyance of a half interest in the land, or that it be sold for his benefit.

The sale, by the master, was suspended, by an interlocutory injunction. Afterwards, a general demurrer to the bill was sustained. The complainant declined to amend further, and, his bill being dismissed, appealed.

As a bill of review, the question upon it is, does the former decree show any error on the face of the record? There is no claim on the ground of newly discovered facts, for which, by leave of court, a bill of review might lie.

1. VEND-OR'S LIEN: None for performance of an act.

The deed from Hilliard Harris to Estes, for which the cotton obligations were given, is not set forth; and there is no allegation that a lien was retained upon the land to secure the delivery of the cotton. Was there an equitable vendor's lien? That is created by equity, and is unknown at law. It arises to secure the payment of the

Harris v. Hanie et al.

*purchase-money*, but does not arise to secure the perform-ance of any act, the breach of which performance would make a claim for unliquidated damages.   In such cases it is considered that the obligation for performance, with the legal right to damages on breach, is taken itself as pay-ment.   Whilst Courts of Equity will create the lien for amounts which are liquidated, they decline the double task of liquidating the damages and then declaring a lien in favor of parties who have not reserved one in the deed.   This, though sometimes questioned, and first held in very strong cases of obligations requiring great length of time for performance, has come now to be a recognizable principle, both in England and in those American States which have not rejected the doctrine of the vendor's lien altogether. *Parrott* v. *Sweetland*, 3 *Mylne & Keene*, 655 ; *Brawly* v. *Catron*, 8 *Leigh*, 522 ; *Arlin* v. *Brown*, 44 *N. H.*, 102 ; *Payne* v. *Avery*, 21 *Mich.* 504. ; *McCandlish* v. *Keene et als.*, 13 *Grattan*, 615.

There was no contract by Estes to pay any sum of money whatever, nor the equivalent of any definite sum, in prop-erty or services.   What was the "purchase-money" to be paid on this bargain?   So much cotton; it may be said, which always has a marketable value.   True, but that value depends always upon the quality, and fluctuates almost with each day of the year.   "So many pounds of cotton" can not, by force of the language, stand for any definite sum of money.   The failure to deliver cotton creates no debt. It is a civil injury, sounding in damages alone.   There was no vendor's lien in this case, at all.   If there had been, it would not have passed by the assignment of the obliga-tions, either to Hanie or complainant, inasmuch as the as-signments were absolute.   *Hecht* v. *Spears*, *adm'r*, 27 *Ark.*, 229.

2. SAME: None, where land sold for cotton.

**3. BILL OF REVIEW.**
**Vacating decree.**

As no lien, for either party, is shown on the face of the record of the former suit, a consent, by Estes, that one should be declared in favor of Hanie, could not injure the holder of the other obligation, as to any vested right. He cannot be said to have been prejudiced or aggrieved by anything appearing in the decree, and a bill of review would not lie. This renders it useless to consider whether this comes within the somewhat limited and not very well defined class of cases where a bill of review may be maintained by one not a party to the former suit.

Considering this simply as a bill of review, it was properly held demurrable. But it has a far more important aspect considered as a bill to attack and set aside a decree for fraud, and to enforce the equities of all parties amongst each other, connected with the objects and subject-matter of the suit.

**4. ARBITRATION, as at common law, good.**

The facts connected with the arbitration, and the conduct of the parties in procuring the decree, if true, as they must, on demurrer, be assumed to be, make a case of fraud, imposition and circumvention which Courts of Equity can not, without renouncing their functions, allow to stand, if the results are, or would be, injurious to the complainant. They speak for themselves, standing confessed.

The arbitration, although made *pendente lite*, has upon its face no reference to the suit. It does not seem to have been made under any order of the court, or with any view of being made the order of the court in the case. One of the three parties to it, was not a party to the suit. It was an arbitration at common law. It appears regular, and, until impeached by facts or denials, is of the very highest authority. "Thereby," says Mr. JUSTICE BLACKSTONE, "the question is as fully determined, and the right transferred or settled, as it could have been by the agreement of the parties, or the judgment of a court." *B., III, p.*

Harris v. Hanie et al.

16.   This is strong language.   But it impresses the policy of the courts to discourage litigation, and support the Christian injunction upon all men, to agree with their adversaries quickly, while they are in the way with them.

By that arbitration, complainant obtained the first and *only* lien which appears in the whole history of the trans-actions, and, while it lasted, it became, between the parties, as effectual as if retained in the original deed to Estes. Any step taken after that, by the parties in the suit, to press it to a termination inconsistent with the arbitration, was a fraud.

The complainant alleges that afterwards, upon represen-tations made to him by Estes, that Hanie had given up his note, he agreed to do the same, and to accept a convey-ance of the land remaining in Estes' hands, and that the agreement was executed.   I cannot see how a mere misrep-resentation as to the obliging spirit of a third person would be a fraud, cognizable in equity, upon one who, with full knowledge of the value of his property, should be prompted to do something of like nature. Upon this matter, however, the court now makes no special ruling.   It will rest here-after with the Chancellor, upon clear knowledge to decide, whether the complainant shall have his note and lien again, or rest content with having his title quieted.

He will get neither, if the old decree is enforced.   His lien arose *pendente lite*, and is not shown by any record, of which a purchaser could take notice.   The sale being by consent of the owner of the legal title when the suit com-menced, of lands then encumbered by no lien, would pass a clear title to the purchaser.   The proceeds will go largely to Hanie, and there may be no surplus.   The complainant must have relief in equity, on his showing, or he will suf-fer irreparable injury.

The defendant should be required to answer the bill.

What aspect of the case will be presented, upon final hearing, should not be anticipated.

Enough has been said to afford a safe and easy guide to the Chancellor and attorneys.

Reverse the decree and remand the cause for further proceedings.