EMMA E. HARRIS, Appellant, v. HENRY LARSEN and KRISTINE LARSEN, Respondents.

No. 1329.   (66 Pac. 782.)

**Homestead: Exemption: Bill of Sale: Debt: Purchase Price.**
Where a purchaser of realty gave a bill of sale of certain hogs as a part of the purchase price, a judgment in an action for failure to deliver the hogs was for a "debt created for the purchase price of the land," within Revised Statutes 1898, sections 1156, 3247, making the land subject to execution for such debts, though a homestead. (BASKIN, J., dissenting.)

(Decided December 6, 1901.)

Appeal from the Second District Court, Weber County.— *Hon. H. H. Rolapp,* Judge.

Action in ejectment.   From a judgment in favor of the defendants, plaintiff appealed.

AFFIRMED.

*Nathan J. Harris, Esq.,* for appellant.

Even though it be contended that the judgment referred to was not strictly a purchase-price judgment, yet it is clearly a judgment on a debt created for the purchase of the land in question, and said premises would not be exempt from sale under an execution issued thereon. "A debt means a fixed and certain obligation to pay money or some other valuable thing, or things, either in the present or in the future." 91 Pa. St. 402.   See also 3 Metc. (Mass.) 526; 45 Barb. 625; Leggett v. Bank, 24 N. Y. 209; 137 Mass. 531!

We contend that the judgment referred to was clearly a purchase-price judgment, that it comes within the provisions of section 3247, and that, therefore, the said premises were subject to execution issued thereon; and that appellant's title is good and valid as against the respondents herein.

*M. D. Lessenger, Esq.,* for respondents.

It is the uniform doctrine in the United States that where an obligation is given, not as security for the purchase money, but a substitute for and in payment of, there is no debt for the purchase price and a vendor's lien is thereby waived; as is also the case where there is a distinct and independent security other than the mere personal undertaking of the vendee, accepted by the vendor, unless the parties agree that such acceptance is not a waiver.   28 Am. and Eng. Ency. of Law (1 Ed.), pp. 178, 179.

MINER, C. J.—I do not concur in the opinion of my learned associate, Mr. Justice BASKIN, in this case.   Mr. twood sold the land to the respondents for $1,500, said sum

to be paid in cash and 16,000 pounds of hogs. All of the purchase price, amounting to $884, was paid, except something less than 16,000 pounds of hogs. The hogs were to be received as final payment of the purchase price of the land, in accordance with the bill of sale, but they were never delivered, and judgment was obtained therefor, as part of the purchase price of the land. Execution was issued on the judgment, and the land in question was sold thereon. The judgment was for a debt created for a part of the purchase price of the land sold. The land, though a homestead, was subject to execution therefor, under section 1156, Revised Statutes 1898, which authorizes a homestead to be sold on execution in satisfaction of a judgment obtained on debts created for the purchase price thereof. Section 3247, Id. This statute is very broad. Under our statutes, words and phrases are to be construed according to the context and the approved usage of the language. Section 2497, Rev. St. 1898. A "debt," as defined by Webster is "that which is due from one person to another, whether money, goods, or services; that which one person is bound to pay to another, or to perform for his benefit; that of which payment is liable to be exacted; due; obligation; liability." Anderson's Law Dictionary defines "debt" as follows: "In its most general sense, that which is due from one person to another, whether money, goods, or services; that which one is bound to pay or to perform for another." Newell v. People, 7 N. Y. 124; Kimpton v. Bronson, 45 Barb. 625. Bouvier's Law Dictionary defines "debt" to mean all that is due a man under any form of obligation or promise. City of Erie's Appeal, 91 Pa. 402. Larsen agreed to deliver the hogs as a part of the purchase price of the land. They represented that part of the purchase price that was not paid in cash. They were never delivered. Until delivered, Larsen was owing the amount they represented on the land. Atwood had no vendor's lien, under the ordinary acceptance of that term, but he held a debt and obli-

gation against Larsen for the debt represented by the hogs. Whether such debt was evidenced by a bill of sale of the hogs, upon which a partial delivery was made, or upon a verbal promise to pay, makes no difference. The debt and obligation existed, and it grew out of the sale of the land. That obligation was given for a part of the purchase price, and the statute gave Atwood the right to levy his execution upon the homestead to satisfy it, as a debt created for the purchase price. A judgment obtained upon a contract made in part payment of land is a purchase-price judgment, whether the promised payment was to have been paid in money, or by the delivery of chattels. Doubtless one object in framing the statute in question was to protect innocent grantors from the fraud and deception of grantees who seek, through sharp practices, to rely on their homestead rights as a defense to the payment of a just debt or obligation created for its purchase.

In my opinion, the judgment is not supported by the findings, and should be reversed, and a new trial granted, with costs. It is so ordered.

BARTCH, J., concurs.

BASKIN, J. (dissenting).—This is an action in ejectment. The case was tried without a jury, and judgment was rendered in favor of the defendants. The only question involved is whether the findings support the judgment. The trial court found "that on July 2, 1895, said R. A. Atwood executed a deed conveying said premises [described in the complaint] to defendant Henry Larsen; that the purchase price of said land was $1,500, of which $884 was paid in cash, and that said defendants, Henry Larsen and Kristine Larsen, gave said Atwood a bill of sale of 16,000 pounds of hogs as a final payment upon said premises; that said Atwood agreed to accept the said hogs as a final payment upon said land, but that said hogs were not delivered to him; that said

hogs were in the possession of said defendants at the time
of the execution of said deed, and that there was no actual
change of possession of the same; that they were never de-
livered to said Atwood; that defendants agreed to keep said
hogs on their said premises until Atwood could have them
removed, not to exceed six weeks from that time; that the
said bill of sale was in writing, and signed by the defendants
herein; that on July 29, 1895, said defendants acknowledged
in writing that there was due said Atwood 6,800 pounds of
hogs, which they agreed to deliver within twelve months;
that in February, 1896, said Atwood accepted from the de-
fendants one cow in lieu of 800 pounds of hogs; that the re-
mainder of said hogs were never delivered to said Atwood;
that thereafter said R. A. Atwood filed an action in the jus-
tice's court for Harrisville precinct, in Weber county, to re-
cover the amount due on said contract, and in which said
Atwood recovered judgment against the defendants herein
for $276 and costs on January 28, 1899." It was, in sub-
stance further found that the real estate in question was sold,
under an execution issued on said judgment, to Pehr Agren,
for $200, and afterwards conveyed to him by the constable
who made the levy and sale under the execution; "that said
real estate is, and was at the time of said sale, worth $1,000,
and that it was all the real estate owned by the defendants
at that time;" that on November 23, 1900, Pehr Agren con-
veyed said real estate to Emma E. Harris, the plaintiff and
appellant. As conclusions of law, the court found that at
the date of the judgment, execution, and sale and conveyance
of said real estate, the same was the homestead of the said
defendant Henry Larsen, and exempt from sale under execu-
tion; that the sale and conveyance of said real estate was void;
and that the said Henry Larsen is now the owner of the same.

Section 1147, Revised Statutes Utah 1898, provides
that "a homestead consisting of lands and appurtenances,
which lands may be in one or more localities, not exceeding

in value with the appurtenances and improvements thereon the sum of fifteen hundred dollars for the head of the family, and the further sum of five hundred dollars for his wife, and two hundred and fifty dollars for each other member of his family, shall be exempt from judgment lien and from execution or forced sale, except as provided in this title." Section 1156 provides that "the homestead is subject to execution in satisfaction of judgments obtained . . . on debts created for the purchase thereof." And, in the chapter relating to executions, section 3247 provides that "no article or species of property mentioned in this chapter or in the title 'Homesteads' is exempt from execution issued upon a judgment recovered for its purchase price, or any portion thereof." Real estate is one of the species of property mentioned herein. Counsel for the appellant contends that the judgment obtained by Atwood, the vendor, against the respondents, was a judgment for the purchase price of the land in question, and therefore, by virtue of the provisions of section 3247, said land was not exempt from the execution under which the same was sold and conveyed to the said Pehr Agren. From the findings it appears that the consideration for the conveyance by Atwood to Henry Larsen was the $884 which was paid, and the bill of sale of 16,000 pounds of hogs, which the trial court found was given to Atwood as final payment upon the premises. From the finding immediately following this one, it is apparent that the term "16,000 pounds of hogs" related to certain hogs which at the time the bill of sale was given were in the possession of respondents, who by agreement were to keep them after the bill of sale was made until Atwood could have them removed, within six weeks from the date of sale. It is apparent from these findings that the parties to the transaction either intended the bill of sale to operate as a transfer of the title to Atwood of the specific hogs so possessed and to be kept as aforesaid by the respondents, or bind said respondents to deliver to him within six

weeks a lot of hogs, not specified, which in the aggregate would weigh 16,000 pounds, and that the bill of sale was given by respondents and received by Atwood in full satisfaction of that part of the consideration for the land which was not satisfied by the payment of the $884. Where the consideration of a conveyance is not money, but an obligation on the part of the vendee to do certain things (as to support the vendor during his life, or to deliver to him within a certain time goods and chattels), the obligation for performance, in connection with the legal right of the vendor to recover ·damages for the breach, is itself payment of the consideration. In such cases the absolute title to the real estate conveyed passes to the vendee unincumbered by a vendor's lien, upon the ground (stated by Sargent, J., in Arlin v. Brown, 44 N. H. 105) "that the sale is made not for a sum of money, but for a security of a different kind, which security itself is the consideration; and the party, having received that, has been paid all he contracted for." The following cases cited in Arlin v. Brown, supra, sustain this principle: Clarke v. Royle, 3 Sim. 499; Parrott v. Sweetland, 3 Mylne & K. 655; Buckland v. Pocknell, 13 Sim. 406; Dixon v. Gayfere, 17 Beav. 421, 21 Beav. 118; Brawley v. Catron, 8 Leigh, 522-528; McCandlish v. Keen, 13 Grat. 615; McKillip v. McKillip, 8 Barb. 552; Harris v. Hanie, 37 Ark. 348, 353. This principle is applicable to the case at bar, and it follows from the findings that, by the payment of $884 and the execution and delivery of the bill of sale, Atwood received the full consideration for which he sold the land, and that the homestead right of Henry Larsen therein is the same as though the whole consideration had been the payment by him of money.

From another view of the case, it is clear that the basis of the judgment was not the purchase price of the land. It appears from the findings that the hogs were not delivered to Atwood within six weeks, and that before the expiration of

24 Utah—10

that time the respondents acknowledged in writing that there was due Atwood 6,800 pounds of hogs, which they agreed to deliver in twelve months; and, upon their failing to do so, Atwood instituted a suit on said agreement and recovered judgment for $276 and costs. The agreement to deliver 6,800 pounds of hogs did not bind the obligees to pay a definite sum as purchase money. Therefore the damages sustained by Atwood were unliquidated, and he could only recover on the agreement the market value of the hogs at the time they should have been delivered; and their value at that time may have been much more or much less, according to the fluctuations of the market, than their market value at the time the conveyance was made and the bill of sale was given, or at the expiration of the six weeks mentioned, or at the date of the agreement upon which the judgment was recovered. In Mitchell v. Gile, 12 N. H. 395, it is said: "But where a party agrees, but neglects, to deliver goods at a specified time, the damages for the non-fulfillment of such an agreement are to be 'calculated according to their value at the time they should have been delivered. If the articles have fallen in price, the defendant will be entitled to the benefits of such a change in the market. If they have risen, the increase in value will belong to the plaintiff." We think it is clear that section 3247, Revised Statutes 1898, does not apply to the judgment in question.

Appellant contends that "even though it be conceded that the judgment was not strictly a purchase-price judgment, yet it is clearly a judgment on a debt created for the purchase of the land in question," and was therefore not exempt from execution under the provisions of section 1156, Revised Statutes 1898. In construing a statute, common-law words are to be understood according to their sense in the common law, unless the context clearly shows that they were used in a different sense. Suth. St. Const., sec. 247, and note 3. "Debt" is a common-law word, and is defined by Blackstone as fol-

lows: "The legal acceptation of debt is a sum of money due by certain and express agreement, as by a bond for a determinate sum, a bill or note, a special bargain, or a rent reserved on a lease, where the quantity is fixed and specific, and does not depend upon any subsequent valuation to settle it." 3 Chit. Bl., p. 154. In Anthony v. Savage, 3 Utah 277-280, 3 Pac. 546, the court held that "a debt is a sum of money due from one person or party to another." In Perry v. Washburn, 20 Cal. 318, 350, 351, in the opinion rendered by FIELD, C. J., it is held that the legal, technical meaning of the term "debt," as used in statutes and in the Constitution both of the United States and that State (California), is a sum of money due by contract, expressed or implied. In that case a writ of mandamus was applied for to compel the tax collector of the city and county of San Francisco to accept for the relator $270.45 in United States notes, tendered in payment of state and county taxes. By the act of Congress known as the "Legal Tender Act" (12 Stat. p. 345), it was enacted that the United States notes "shall be lawful money, and a legal tender in payment of all debts, public and private, within the United States, except duties on imports and interest upon bonds and notes." A statute of California required taxes to be paid in legal coin of the United States. The writ was denied upon the ground that the term "debt," as used in the act of Congress, did not include taxes, and that Congress intended only such obligations for the payment of money as were founded upon contract. The same question was involved in the case of Lane Co. v. Oregon, 7 Wall. 71-81, 19 L. Ed. 101, and the case of Perry v. Washburn was cited, and Judge Field's definition was adopted and applied; also in Meriwether v. Garrett, 102 U. S. 472, 513, 514, 26 L. Ed. 197; Danforth v. McCook Co., 11 S. D. 258, 76 N. W. 940, 74 Am. St. Rep. 808; Rhodes v. O'Farrell, 2 Nev. 60. In the following cases the term "debt" is defined as in the foregoing cases: State v. Hawes, 112 Ind. 323-326, 14 N. E.

87; Harris v. Hanie, 37 Ark. 348. In the latter case the consideration for the conveyance was a contract to deliver a certain quantity of cotton, and in the opinion it is said: "There was no contract by Estes to pay any sum of money whatever, nor the equivalent of any definite sum, in property or services. What was the 'purchase money' to be paid on this bargain? So much cotton it may be said, which always has a marketable value. True, but that value depends always upon the quality, and fluctuates almost with each day of the year. 'So many pounds of cotton' can not, by force of the language, stand for any definite sum of money. The failure to deliver cotton creates no debt. It is a civil injury, sounding in damages alone." There is nothing in the statute which indicates that the term "debt" was used in any other than its technical and common-law meaning.

For the foregoing reasons, I dissent from the judgment rendered by my associates.