## THE KNICKERBOCKER TRUST COMPANY

### *v.*

## THE CARTERET STEEL COMPANY et al.

[Submitted October 13th, 1911. Decided January 13th, 1912.]

1. A surety for a purchaser, who pays the purchaser's debt to the vendor, is subrogated to the rights of the vendor, and to any lien or claim which the vendor might have asserted.

2. A vendor's lien is not a right which necessarily arises out of contract, but it is rather an equity raised out of the circumstances, on the ground of a constructive trust, giving the vendor a lien on the property conveyed to secure the payment of the purchase-money; and the force of the lien is not increased by an agreement that a vendor's lien should be reserved.

3. A vendor's lien may be lost by a distinct waiver of it.

4. A vendor's lien may be lost by a transfer of the title by the purchaser to a purchaser for value and without notice; but a grantee of the purchaser who has notice, or is put upon inquiry, takes title subject to the lien.

5. A mortgage intended to cover after-acquired property attaches only to such property in the condition in which it comes to the mortgagors, so that, if already subject to other liens, the general mortgage would not displace them, although they might be junior in point of time.

6. A provision in a mortgage that it shall cover after-acquired property is a provision which can be given effect only in equity.

7. A vendor having a right to assert a vendor's lien may waive it by parol, or even orally, or by acts manifesting an intention to discharge it.

8. The mere taking of a note or bond of the vendee is not a waiver of a vendor's lien, since, if a vendor looks to the purchaser alone for his money, without taking any other or further security, the lien continues.

9. Where a vendor of an interest in land at the time of his conveyance took, as security for payment, a bond of the purchaser, guaranteed by a third person to a certain amount, and the bonds of the purchaser, secured

by the purchaser's trust mortgage of the land conveyed, and the vendor afterwards stated to persons about to purchase such bonds that he had conveyed an undivided interest in the lands in question to the purchaser, free of all liens and encumbrances, the vendor either waived his lien, or was estopped by conduct from asserting it.

10. The fact that a vendor remains silent as to any vendor's lien, and fails to assert it when questioned by intending investors as to the property conveyed on which they were expecting a lien, estops the vendor and a party subrogated to his rights from asserting any lien as against the holders of the purchaser's bonds secured by a deed of trust of the land conveyed.

———

On exceptions to master's report in a foreclosure suit.

On January 10th, 1898, the Carteret Steel Company owned an undivided interest in property in Morris county known as the Copperas Mine Tract, which it mortgaged to the complainant as trustee to secure an issue of bonds aggregating $100,000. The mortgage contained a provision that it should cover after-acquired property, and a note of this provision was inserted in the bonds secured thereby. Some, if not all, the bonds secured by this mortgage were negotiated on behalf of the Carteret company. On January 1st, 1899, the Carteret company made another mortgage to the complainant as trustee which described the same lands to secure an issue of bonds aggregating $500,000. This mortgage also contained a provision covering after-acquired property, and a note thereof is contained in the bonds secured thereby. There was a reservation of $125,000 of the second bond issue with which to take up and pay off the bonds of the first issue; some, if not all, of the second issue, excepting the above-named reservation, were negotiated on behalf of the Carteret company. There was at that time an undivided one-half interest in the mortgaged premises which was held by one Condit as trustee of the Cobb estate, and also an outstanding life estate during the life of Sarah J. Bell. On November 29th, 1898, an agreement was entered into by the Carteret company for the purchase of these two outstanding interests for $30,000, of which sum $10,000 is said to have been the purchase price of the life estate. While these outstanding interests were controlled by different persons, it is quite certain that their purchase was considered by all parties to be a

single transaction. The agreement for the sale of these outstanding interests was performed on January 29th, 1899, by the conveyance thereof to the Carteret company. At the time the contract was performed, $10,000 was paid in cash to Mrs. Bell for her life estate, but the purchase price of the undivided half interest in the land was not paid or satisfied to Condit, trustee, the vendor. He took as security for its payment the bond of the company guaranteed by the defendant John P. Jones for $31,000, and bonds of 'the second issue of the Carteret company aggregating $62,000. Subsequently, Condit sued Jones on his guarantee of the bond of the Carteret company and recovered judgment for the amount thereof. which judgment Jones subsequently paid. By virtue of this transaction he claims to be subrogated to any right which Condit, trustee, may have had in the premises. The defendant Jones did not answer the original bill, but allowed a decree *pro confesso* to be taken against him. Three or four years later he filed an answer to a supplemental bill in the cause setting up—*first,* that by virtue of the conveyance from Condit, trustee, to the Carteret company on January 29th, 1899, without payment of the purchase-money a vendor's lien arose in Condit's favor which, notwithstanding the provision in the trust mortgages to the complainant by which the lien thereof was attempted to be attached to after-acquired property, took precedence over the said mortgages and was a first lien upon the land conveyed, and that not only did the lien arise by operation of the principles of equity jurisprudence, but that there was a positive oral agreement between the vendor and the Carteret company that such lien should be created and established; *second,* that inasmuch as he was obliged to pay to Condit the purchase-money evidenced by the company's bond on which he was surety, he became subrogated to all the rights of the vendor to a vendor's lien, and he therefore insists that he is entitled to a first and prior lien on the half interest in the said tract of land which was conveyed to the company by Condit, and also upon the life estate to which the company derived title from Mrs. Bell.

It may be said that there was a further outstanding interest in the title to the lands in question which was got in about the same time.

The issues in the case were submitted by consent of parties to the master to whom the cause was referred. To his report exceptions were filed; subsequently, the Jones claim appeared, and it was referred to the master with the other issues. The master reported upon the rights of the parties and against the claim of Jones. To his original and supplemental report exceptions are filed. The only point that was argued was the validity of the Jones claim.

*Mr. John B. Humphreys,* for the complainant.

*Mr. John W. Harding,* for the defendant John P. Jones.

*Mr. Frederick W. Hope* and *Mr. William J. Leonard,* for the certain bondholders.

HOWELL, V. C.

The question was raised *in limine* that the defendant Jones was not in a position to assert any right whatever, for the reason that he could not be subrogated to Condit's rights. I think, however, that it is quite clear that Jones by virtue of the doctrine of subrogation is entitled to stand in the shoes of Condit and to assert any claim which Condit might have asserted, and to litigate the same. He was a surety for the vendee, and having paid the vendee's debt, he is entitled to the place which the vendee had. This is justice, and it is supported by the cases. *Meux* v. *Smith, 11 Sim. 410; Nottingham Building Society* v. *Thurstan (1903), A. C. 6; Sheld. Subr. § 97.*

The doctrines concerning vendors' liens are firmly established in our jurisprudence. They give to the grantor or vendor who has parted with the title to his property an equitable lien on the property conveyed to secure the payment of the purchase-money. It is not a right which necessarily arises out of contract; it is rather an equity raised out of the circumstances on the ground of a constructive trust to protect the vendor. to such extent as may be necessary; and it is difficult to see how as between the parties the force or effect of the lien could be enhanced by a mere agreement that a vendor's lien should be reserved. *Graves* v. *Coutant.*

*31 N. J. Eq. (4 Stew.) 763; Stickle* v. *High Standard Steel Co., 78 N. J. Eq. (8 Buch.) 549.* This lien, however, may be lost by a distinct waiver of it or by a transfer of the title by the grantee to a purchaser for value and without notice. A grantee or mortgagee from the vendee who has notice or is in such circumstances as that he is put upon inquiry would take title to or a lien upon the premises subject to the lien of the vendor. These principles are very clear and plain. *Van Doren* v. *Todd, 3 N. J. Eq. (2 Gr. Ch.) 397; Butterfield* v. *Okie, 36 N. J. Eq. (9 Stew.) 482.*

The situation, however, in this case is complicated by the fact that the vendor's lien and the lien of the mortgage, hostile to each other as they are, arise simultaneously and out of the same transaction. It is the deed from the Cobb estate to the Carteret company which gives rise to the vendor's lien and which also places the property within the purview of the mortgages. There thus appears to be at the outset a conflict of liens each of which is struggling for priority. The situation, however, is not singular. Similar circumstances have been dealt with by our courts in important cases. The first case that I have been able to find in this state which concerns conflicting liens of the character of those in this suit is *Williamson* v. *New Jersey Southern Railway Co.* *(1877), 28 N. J. Eq. (1 Stew.) 277.* The proceeding in that case was for the foreclosure of a mortgage on the New Jersey Southern railway, which mortgage contained a provision that it should cover future-acquired property. One of the controversies related to the priority between the mortgage and certain mechanics' lien claims. The mortgage was made and recorded long before the work and materials were done and provided; the property liable for the mechanics' liens was conveyed to the company before the mechanics' liens were actually filed and so came within reach of the mortgage provision, a situation very similar to the one at bar. Chancellor Runyon held that a mortgage which was intended to cover after-acquired property only attached to such property in the condition in which it came to the mortgagor's hands; that if it was already subject to mortgages or other liens the general mortgage would not displace them, although they might be junior in point of time. The authority cited for this proposition is *New Orleans, &c., Railroad* v. *Mellen, 12 Wall.*

*362.* The chancellor, by his decree, gave priority to the mechanics' liens. The report of the case on appeal is found in *29 N. J. Eq.* (*2 Stew.*) *311* (*1878*). It was there stated in the opinion of Mr. Justice Depue to be a principle of law that where after-acquired property comes into the hands of the mortgagor, subject to encumbrances or liable to liens, the mortgage attaches to the property in the condition in which it comes to the mortgagor's possession, subject to such liens and encumbrances as are then on it. The decree below was reversed, but not on this point.

Chancellor Runyon held the same rule in *United New Jersey Railroad and Canal Companies* v. *Long Dock Co.* (*1887*), *42 N. J. Eq.* (*15 Stew.*) *547;* and it was dealt with again by the court of errors and appeals in *Campbell* v. *Roddy* (*1888*), *44 N. J. Eq.* (*17 Stew.*) *244,* and there applied to the case where an engine and boiler were made subject to a chattel mortgage which was never registered. The chattels were annexed to the real estate upon which the mortgagor had previously given a mortgage. It was held that the lien of the chattel mortgage should be protected so far as it would not diminish the security which the real estate mortgage would have had if the annexation had not been made. The same subject was dealt with by Vice-Chancellor Pitney in *Daly* v. *New York and Greenwood Lake Railroad Co.* (*1897*), *55 N. J. Eq.* (*10 Dick.*) *595; affirmed, 57 N. J. Eq.* (*12 Dick.*) *347.* There the controversy was between an unrecorded purchase-money mortgage and a previously executed railroad mortgage which purported to cover after-acquired property. The vice-chancellor says: "The general rule seems to be that the holder of a mortgage who claims by its terms that it is a lien upon after-acquired property takes such property subject to liens upon it between the parties. This was distinctly decided by the supreme court of the United States in the case of *United States* v. *New Orleans Railroad Co.* (*New Orleans, &c., Railroad Co.* v. *Mellen*), *12 Wall. 362,*" from Judge Bradley's opinion, in which he quotes extensively; and he further says: "It is familiar learning found in all the cases that a mortgage upon after-acquired property cannot rise higher than a contract to convey the title to that property when acquired, and a suit for its enforcement is in effect a suit for the specific performance of a contract." Citing *Holroyd* v.

*Marshall, 10 H. L. C. 191; Pennock* v. *Coe, 23 How. 117,* and the leading case in New Jersey, *Smithurst* v. *Edmunds, 14 N. J. Eq. (1 McCart.) 408.*

The court of chancery had the same question up in *General Electric Co.* v. *Transit Equipment Co. (1898), 57 N. J. Eq. (12 Dick.) 460.* There the controversy was between a mortgage covering after-acquired property and chattels which had been delivered to the mortgagor under a conditional contract of sale. It was held upon the principles above stated and upon the authority of the cases that the right of the conditional vendor must prevail upon the principle laid down by Mr. Justice Bradley in the *New Orleans Railroad Case,* that a mortgage intended to cover after-acquired property can only attach itself to such property in the condition in which it comes into the mortgagor's hands, and that if that property is already subject to mortgages or other liens the general mortgage does not displace them, though they may be junior to it in point of time; it only attaches to such interest as the mortgagor acquires.

While in this case the transfer of the property by deed from Condit to the Carteret company may create simultaneous liens, it must yet be considered that however instantaneously the liens may arise there must be in our contemplation of the transaction a time when the title leaves the vendor and vests in the vendee; as it leaves the vendor the vendor's lien attaches; as it reaches the vendee the lien of the mortgage attaches. It may be better described perhaps as a sequence of events rather than a sequence of time.

The doctrine is thoroughly established by these cases in New Jersey and by the decisions in the federal jurisdiction. *Fosdick* v. *Schall, 99 U. S. 235; Irrigation Company* v. *Garland, 164 U. S. 16.* The leading case in England is *Mackreth* v. *Symmons (1808), 15 Ves. 329; 1 W. & T. L. C. 447.* In that case Lord Elden held that where there was a contest between a vendor's lien for unpaid purchase-money and the right of a person who had subsequently obtained from the purchasers a mere contract for a mortgage and nothing more that the vendor's lien had priority.

It was argued on behalf of the complainant that inasmuch as the vendor's lien was a lien only in contemplation of equity, and that the lien of the mortgage was a legal lien, the latter took precedence of the former upon well-known principles and maxims of equity. In my opinion, counsel takes a wrong view of the situation at this point. A provision in a mortgage that it shall cover after-acquired property is a provision which can be only contemplated in equity. I know of no way of effectuating such a provision according to the rules of the common law. *Smithurst* v. *Edmunds, 14 N. J. Eq.* (*1 McCart.*) *408; Lister* v. *Simpson, 38 N. J. Eq.* (*11 Stew.*) *438.* The conflict, therefore, from this point of view is not between a legal title and an equitable title, but between two equities, and the equity of the vendor being prior in the order of events, must take precedence over the lien of the mortgage. The defendant Jones further claims that in addition to the right which was acquired by Condit by operation of law, Condit must be held to have had a vendor's lien for the reason that he specially reserved it. I do not think he did make any such reservation, but I shall deal with the question later on.

It was argued on behalf of the complainant that if the court found that the vendor had ever by any method acquired a vendor's lien, he is not now entitled to the benefit of it because he has either waived his right or has bound himself by an estoppel not to assert it. It will be remembered that when the conveyance was made by Condit to the Carteret company he took from the company its bond for the purchase-money guaranteed by the defendant Jones, and also sixty-two of the bonds which were secured by the second mortgage upon the Copperas mine tract, a one-half interest in which passed at the same instant to the company; and it was insisted that this fact showed that Condit did not rely upon his vendor's lien, but relied rather upon the personal responsibility of Jones as guarantor of the company's bond, and further upon such lien as he might acquire upon the property which he had conveyed, by reason of his holding sixty-two of the bonds issued under the second mortgage. There can be no doubt but that a vendor having a right to assert a vendor's lien may waive or avoid the same by parol, or even orally, or by acts manifesting an intention to discharge the same.

In *Brinckerhoff* v. *Van Sciven (1842), 4 N. J. Eq. (3 Gr. Ch.) 251,* Chancellor Pennington says: "If the vendor take any other than the personal security of the vendee for his money, as the note of a third person, a transfer of stock or a mortgage for a part only of the consideration money, these or any other circumstances going to show that he does not look to the land as his security, will be taken to be an implied waiver of the lien and will discharge the land from further liability.

"Although somewhat disputed, yet upon examining the cases it is now settled, and upon good authority, I think, that the taking of a mere note or bond of the vendee will not avoid the lien. If the party looks to the vendee alone for his money, without taking any other or further security, the land is liable." This seems to be the earliest case in New Jersey on the subject. It is based upon *Meckreth* v. *Symmons, 15 Ves. 328; Fish* v. *Howland, 1 Paige 20,* and *Bayley* v. *Greenleaf, 7 Wheat. 46.*

In *Dudley* v. *Dickson (1862), 14 N. J. Eq. (1 McCart.) 252,* Chancellor Green held that the taking of a distinct security either in the shape of real or personal property from the vendee, or taking the responsibility of a third person, is an implied waiver of the lien, and that any act which indicated that it was not the intention of the parties that the purchase-money should continue a lien upon the land conveyed, is a waiver of such lien, citing *Gillman* v. *Brown, 1 Mas. 191; S. C. on appeal, 4 Wheat. 255; Nairn* v. *Prowse, 6 Ves. 752,* and *Capper* v. *Spottiswoode, Taml. 21.* In that case the vendee gave his note to the vendor payable at thirty days. This was subsequently renewed for ten days by the vendee by a note endorsed by Gray. Later, the grantee executed a declaration of trust whereby she stated that she held one-third of the said land or the proceeds of the sale thereof for the indemnification of Gray against the payment of the note which he had endorsed, and that whenever the note should be paid to Dudley, the complainant, the obligation should cease. It was held that the complainant was not entitled to an equitable lien by way of vendor's lien upon the whole of the premises conveyed, but that he must be restricted to the security afforded by the declaration of trust.

In *Armstrong* v. *Ross (1869), 20 N. J. Eq. (5 C. E. Gr.) 121,*

the controversy was over a void mortgage which had been given to secure the purchase-money. The mortgage was given the position of a vendor's lien because given for the purchase-money, the chancellor stating that the taking of a note or bond will not be held evidence of the waiver of the lien, and taking the mortgage which they have shows an intention to preserve the lien surely will not be held to be a waiver of it.

In *Corlies* v. *Howland* (1875), *26 N. J. Eq.* (11 C. E. Gr.) *311*, it was again declared by Vice-Chancellor Van Fleet, on the authority of Chancellor Kent, that the taking of a note, bill or bond, with distinct security, or taking distinct security exclusively by itself, either in the shape of real or personal property from the vendee, or taking the responsibility of a third person, is evidence that the seller did not repose upon the lien, but upon independent security, and it discharges the lien. *4 Kent Com. 151.* In that case Henry Howland purchased land from the complainant which, at his request, was conveyed by the complainant to Henry W. Howland. The vendor gave his promissory note for the whole purchase-money, and it was held that the vendor's lien attached, notwithstanding the acceptance of the father's note, for the reason that the son had notice on the delivery of the deed that the purchase-money was unsecured and unpaid.

In *Acton* v. *Waddington* (1889), *46 N. J. Eq.* (1 Dick.) *16*, Chancellor McGill cited Vice-Chancellor Van Fleet's opinion in *Corlies* v. *Howland, supra,* on the point of waiver, although the question of waiver does not appear to have been litigated before him. The subject is discussed by Vice-Chancellor Reed in *Harter* v. *Capital City Brewing Co., 64 N. J. Eq.* (19 Dick.) *155*, where the vendor had agreed to take stock of the defendant corporation in payment of the purchase-money. He says that it is not to be conceded that the law is settled that if the contract was such as to permit the corporation to pay in shares of stock the vendor's lien for such portion of the consideration was thereby lost. He further says that the court of appeals of New York in *Fisk* v. *Potter, 2 Keyes 84,* held apparently without much consideration that if the price for land is payable in some commodity other than money, the vendor's lien is lost, that the rule, as settled by the great weight of authority, was that where the consideration

for land sold is other land or personal property, with no mandatory price fixed for which the land or personal property shall be delivered, there can be no lien, but that where the amount of the purchase price was fixed by the agreement between the parties the lien would lie. Citing *Harris* v. *Hanie, 37 Ark. 348; Young* v. *Harris, 36 Ark. 162; Plowman* v. *Riddle, 14 Ala. 169; Deason* v. *Taylor, 53 Miss. 697; Beal* v. *Harrington, 116 Ill. 113; Mackreth* v. *Symmons, 1 White & T. Lead. Cas. 289,* in each of which cases the vendor's lien was allowed.

The law so clearly declared in New Jersey is in accord with the current of decisions in the other American jurisdictions. Hare & Wallace, in their American notes to the case of *Mackreth* v. *Symmons, 1 White & T. Lead. Cas. 447,* after indicating the conditions under which a vendor's lien is created, says:

"On the other hand the lien will be considered as waived whenever any distinct and independent security is taken, whether by mortgage on other land or pledges of goods or responsibility of a third person, and also when a security is taken upon the land either for the whole or a part of the unpaid purchase money, unless there is an express agreement that the implied lien shall be retained. The taking of the vendee's obligation does not affect the lien, but the taking of a mortgage on other property, or a bond or note of the vendee with surety, or a negotiable note drawn by the vendee and endorsed by a third person, or drawn by a third person and endorsed by the vendee, or a draft on a third person and accepted by the drawee, will repel the lien presumptively."

See extended note to *Royal Con. Mining Co.* v. *Royal Con. Mines, 157 Cal. 737; 110 Pac. Rep. 123,* re-reported in *137 Am. St. Rep. 165,* where all the cases are collected.

I think that the American rule may be considered as so established. The English rule, however, appears to be more liberal toward the vendor and to incline toward the idea that it is a question of the vendor's intention to be gathered from all the circumstances.

Under the authority of these cases it must be quite clear that the vendor's lien which Mr. Condit might have insisted upon was either waived by him or was so acted upon by him as to create an estoppel against its assertion at the present time. I do not think it at all probable that Mr. Condit ever bargained for a vendor's

lien upon the premises in question. His evidence on the subject
is so uncertain, so indicative of loss of memory about the details
of the transaction, and expressed so vaguely and in such uncer-
tain tones, that any tribunal would hesitate to found any right
upon it. It seems to me that his notion of a a vendor's lien must
have been an afterthought; that it is not likely that an ordi-
nary business man would be sufficiently acquainted with the char-
acter, the incidents and the qualifications of a vendor's lien to
know how far it would be a protection to him. The subject is
abstruse, complicated and open to many limitations and excep-
tions. Even well-informed lawyers might doubt their own judg-
ment as to the effect of a vendor's lien without the most careful
examination of the authorities. How the ordinary business man,
a class to which Mr. Condit evidently belongs, could expect to
rely upon a vendor's lien, a security of which he could know so
little, and never suggest the making of a mortgage, which was a
security with which he must have been perfectly familiar on ac-
count of his official position as county clerk of the county of
Morris, is a situation that I cannot appreciate. Besides, I think
it is fully established by the preponderance of the evidence that
Mr. Condit stated to persons about to become purchasers of the
bonds of the company which were secured by the mortgage of this
future-acquired property that the Cobb estate had conveyed the
title to the undivided half interest of the lands in question to the
Carteret company free of all liens and encumbrances. The in-
tention that if he made such statement it referred only to the out-
standing fee-simple title and not to the encumbrances is to my
mind a mere quibble, because he must have known, as a business
man, that purchasers of bonds of the company would be expecting
a first lien upon the property, and that they as investors would
not be liable to place their money subject to the unpaid purchase-
money to the extent of one-half the land in question. The fact
that he remained silent as to his vendor's lien and failed to as-
sert the same when he was being interrogated by intending in-
vestors as to the property on which they were expecting a lien is
sufficient in my judgment to estop him and his successor, the de-
fendant Jones, from asserting any right as against the holders
of the bonds secured by the consolidated mortgage. The evidence

of Senator Kline, Mr. Davis and Mr. Hope on this subject is pointed and clear, and is to my mind a complete refutation of the position taken by Mr. Condit.

I, therefore, hold that while the situation is one in which Mr. Condit might at one time have insisted upon a vendor's lien, the evidence shows either that he waived his right or that he is estopped from now asserting it, and that upon this point the master's report should be confirmed. The other exceptions, relating principally to the standing of individual bondholders, were not argued, and I suppose were waived.

I will advise an order overruling all the exceptions and confirming the report of the master.