This bill seeks the establishment of a vendor's lien and an accounting by the defendants.
In 1925 the complainant was the owner of a large tract of land bordering on Barnegat bay, in Ocean county, New Jersey, which, with adjoining lands owned by Albert S. Tilton, comprised approximately one thousand four hundred acres. The complainant and Tilton entered into an agreement with one Davis, copy of which agreement is attached to the bill of complaint, by virtue of which Davis was constituted sales agent for the entire property under terms and conditions detailed therein. The agreement contained a provision that twenty-five per cent. of the selling price of said lands should be set aside as an improvement fund and deposited in a local bank and devoted to the improvement and development of lands therein described. Subsequently, and with the consent of the complainant and Tilton, that agreement was assigned to the defendants Hause and Hodgson, who in turn assigned it to the defendant Bayshore Development Company. Prior to this latter assignment and prior to the incorporation of the Bayshore Development Company, Hause and Hodgson entered into a further agreement with the complainant to purchase from him sixty acres of the lands described in the first agreement for the sum of $300 an acre plus a further consideration of $25,000, to be deposited in the improvement fund created by the first agreement and used for the purpose of improving and developing complainant's property other than the sixty acres thus agreed to be sold. This agreement was also assigned to the defendant company.
The bill seeks an accounting of the moneys received by the defendants from the sale of lots under the first agreement and of the moneys deposited in the improvement fund thereunder. It also seeks to impress a vendor's lien upon the *Page 229 
unsold portion of the sixty-acre tract for that portion of the $25,000 not deposited in the improvement fund as required by the second agreement.
At the trial of this cause I held that the question of the complainant's right to an accounting under the provisions of the first agreement could not be considered here because the rights of the parties had been determined in a declaratory judgment suit at law and that that issue was res adjudicata. The only issues considered in this suit are those respecting the alleged vendor's lien.
The bill is based upon what purports to be a written agreement between the parties dated February 10th, 1926, copy of which is also attached to the bill of complaint. This alleged agreement was never executed by the defendants and cannot be considered as the agreement of the parties. That an agreement for the purchase of the sixty acres mentioned did exist between the parties is not, however, disputed, and that agreement is evidenced by voluminous correspondence which was received in evidence and from which it appears that the copy of the writing attached to the bill of complaint contains substantially the agreements and covenants arrived at by the parties and that this writing is for all practical purposes a compilation of the terms of the agreement theretofore reached. The complainant conveyed to the defendant company the lands the subject of the sale and fully performed his part of the agreement. The defendant company paid the cash consideration of $300 per acre to the complainant but failed to deposit the $25,000 in the improvement fund. Having accepted the benefit of complainant's performance of his part of the contract here involved, the defendants cannot escape the liability of completing performance on their part.
It is contended that the $25,000 to be deposited as stated was not a part of the purchase price and that, therefore, no vendor's lien could arise. But to my mind it could with as much propriety be said that if the $25,000 had been deposited and the $18,000 not paid, no vendor's lien could arise for the unpaid portion of the consideration. It is plain, *Page 230 
however, that the payment of this sum into the improvement fund was as much a part of the consideration for this conveyance as was the payment of the $18,000 in cash direct to the complainant. Both payments made up the selling price and it is significant that the $25,000 fund was, with some minor exceptions, to be devoted exclusively to the improvement of the lands of the complainant other than those which were the subject of this purchase. Unless, therefore, complainant has waived his right to a vendor's lien that right still exists and should be enforced in this suit.
Under the terms of the agreement of sale the purchaser was to lay out the lands purchased into lots, blocks and streets and was to convey four hundred and eighty of those lots to a trustee to secure an issue of interest-bearing gold notes of the company to the amount of $60,000. The notes were to be in the denomination of $250 each and two lots, to be specifically designated in each note, were to be held by a trustee as security for its payment at maturity and upon default the trustee was to be authorized to convey those lots to the holder of the note. These notes were to be sold by the company and the $25,000 improvement fund was to come from the proceeds of such sale. The complainant, who is a member of the bar of this state, acted as counsel for the company in arranging with a bank to act as trustee and in preparing a deed from the company to the bank for the lots to be pledged as collateral security as above indicated. He also prepared the charter and organized the defendant company, but he was not the general counsel of the company. The gold notes were issued and practically the whole issue sold, but the arrangement for the bank to act as trustee was never consummated, although a deed for a portion of the lots to be conveyed as collateral security for the notes was prepared by the complainant, executed by the defendant company and delivered to the bank. The bank, however, refused to accept the trust except upon the performance of certain conditions imposed by it. Those conditions were never complied with and the bank finally refused to act and the deed which had been retained by it pending completion of the *Page 231 
arrangements was returned to the company. In the meantime, counsel other than the complainant had assumed control of the company's legal business and particularly of the matters respecting the note issue and its security. The greater portion of the gold notes was purchased and is now held by directors of the defendant company, and many of them were sold pending the arrangements for the bank to act as trustee with the knowledge of the complainant. It is contended that as the $25,000 improvement fund was to be raised by the sale of the company's gold notes, the complainant has restricted himself to that source for that portion of the purchase price of his lands represented by that fund and has thus waived his right to a vendor's lien. Bliss v.Linden Cemetery Association, 90 N.J. Eq. 404, is cited in support of this proposition. But that case does not sustain the defendant's contention. In that case Vice-Chancellor Backes said that "payment was to be made out of the proceeds of burial plots only and by restricting himself to this single medium of payment, he thereby indicated his intention to waive his right to the security of the vendor's lien upon lands not devoted to thatpurpose." (Italics mine.) The fund involved in that case was that arising from the sale of lands other than burial plots. The vice-chancellor indicated that a vendor's lien, if any, in that case, could apply only to the lots from the sale of which the vendor had agreed to accept his purchase money; but also that the lien could not attach to those lots because they were exempt from execution and sale under Comp. Stat. p. 375, as held by Vice-Chancellor Leaming in Spear v. Locust Wood Cemetery,72 N.J. Eq. 821. The most that could be contended here, therefore, would be that the complainant had restricted himself to the lots to be conveyed to the trustee as security for the gold notes; but as the arrangement for the conveyance of these lots to a trustee was never consummated it is not here necessary to consider the effect of that arrangement on the vendor's lien had it been completed. It is also contended that the defendant did not agree generally to deposit the sum of $25,000 but that those moneys were to come from *Page 232 
a specific course; namely, the sale of gold notes, and that if, through any fault of the complainant, the fund was not so produced, then his right to have the fund deposited was waived. There is nothing in this point, however, because it clearly appears that practically the whole note issue was sold and more than sufficient funds realized to make the required deposit.
On July 22d 1926, the $25,000 not having been deposited in accordance with the agreement and some controversy having arisen with respect thereto, the defendants gave the complainant a note for $20,000 payable four months after date. It was then represented by the defendants that they had expended the sum of $5,395 for purposes to which the fund was to be devoted, and it was agreed between the parties that if upon an accounting it was determined that this statement was correct, the sum of $395 would be credited upon the note upon payment. It is claimed on the authority of Knickerbocker Trust Co. v. Carteret Steel Co.,79 N.J. Eq. 501, that the acceptance of this note by the complainant was a waiver of his vendor's lien; but the evidence indicates that the note was taken merely to extend the time for the payment of the $25,000 into this fund and not as substituted security for the vendor's lien. The vendor had no greater security by virtue of the note than he had before, but his right to enforce it was suspended until the maturity of the note. The note not being paid at maturity the original rights of the parties remained unless otherwise waived.
It is also claimed by the defendant that the rights of the gold noteholders in the lots designated therein are superior to the rights of the complainant under his vendor's lien, on the ground that they are purchasers for value without notice; but Exhibit D2, the prospectus issued by the company in connection with the gold note issue, and a copy of which it was stipulated was delivered to every purchaser of gold notes, contained this statement:
"A further resolution of the board of directors prohibits the expenditure of the moneys received from the sale of these gold notes for any other purpose than * * *, and the payment of the *Page 233 
balance due on the purchase of the fifty acres out of which the four hundred and eighty lots are being pledged as security."
That clearly put the note purchasers on inquiry as to the unpaid purchase moneys and for that reason they cannot be said to be purchasers for value without notice. Of course, a decree in this suit cannot bind persons not parties except those claiming rights accruing after its commencement and the filing of the lispendens. It appears that subsequent to the commencement of this suit and the filing of the lis pendens many of the noteholders accepted mortgages on the lots mentioned in their respective gold notes in lieu of their right to a conveyance of the lots and of other rights under said notes, specifically waiving rights theretofore existing. The question of the rights of these note purchasers is not now before the court.
Defendants' counsel also urges that the existence of a vendor's lien is a question of intention; that the complainant's conduct indicated no intention to rely on his vendor's lien as security and that it was, therefore, waived, its assertion now being an afterthought; but I do not consider the complainant's conduct capable of that construction and his express testimony refutes any such inference.
I am of the opinion that the complainant has not waived his right to a vendor's lien and that it should be enforced to the extent necessary to protect his rights in the $25,000 improvement fund. Of course, there must be an accounting with respect to this fund, which was separate and distinct from the improvement fund contemplated by the agreement of November 11th, 1925. Although the purposes of the two funds were almost identical, they were, in fact, separated after the conveyance of the sixty-acre tract by the complainant.
The decree will be for the complainant. *Page 234